UNITED STATES, Appellee,

v.

William L. McDONALD, Private, U. S. Army, Appellant.

No. 34,895.
CM 435627.

U. S. Court of Military Appeals.

July 7, 1980.

For Appellant: *Captain Charles E. Trant* (argued); *Captain Robert L. Gallaway* (rear-

gued); *Colonel Robert B. Clarke, Major Benjamin A. Sims, Captain Buren R. Shields III* (on brief); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Lieutenant Colonel John R. Thornock, Major Charles A. Byler, Captain D. David Hostler.*

For Appellee: *Captain David P. Saxon* (argued); *Captain Kenneth H. Clevenger* (reargued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Captain Laurence M. Huffman* (on brief); *Major Douglas P. Franklin, Major Ted B. Borek.*

## OPINION OF THE COURT

COOK, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial, consisting of a military judge alone, of falsely altering a check, larceny of United States currency, and presentation of a false claim against the United States, in violation of Articles 123, 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 923, 921 and 934, respectively. He was found not guilty of the sale of marijuana, in violation of Article 134, *supra.* We granted review to determine whether various handwriting exemplars were admitted into evidence contrary to our holding in *United States v. McOmber,* 1 M.J. 380 (C.M.A.1976).

The issue is raised in the following factual context. Appellant was apprehended by military authorities on June 14, 1976, for the alleged sale of marijuana. He was interviewed by military authorities on that date and was advised of his Article 31–*Tempia*[1] rights. At that point in time, appellant signed a "waiver certificate." The interview was concerned solely with the charge involving marijuana, which was preferred on July 26, 1976. On June 30, 1976, appellant was interviewed by an agent of the United States Secret Service, who testified at trial that when he interviewed appellant, he was involved in the investigation of an altered United States Treasury check which had been returned to the Secret Service by a Federal Reserve Bank. As appellant's name appeared on the check, the agent made arrangements with the Criminal Investigation Division (CID) headquartered at Fort Lewis, Washington, to interview him.

Prior to questioning, the agent advised appellant of his *Miranda*[2] rights, and appellant executed another waiver certificate. He agreed to provide the agent with handwriting exemplars, which, in due course, were submitted on a form provided by the Secret Service. The agent testified he was not acting on behalf of the United States Army and that he normally handled "these kind of Government Checks."

At trial, defense counsel objected to the introduction of the handwriting exemplars obtained by the agent, relying on our decision in *United States v. McOmber, supra.* Counsel represented he had not been notified of the interview, and, consequently, the exemplars were inadmissible. The military judge rejected this argument with the following remarks:

It's my ruling that Mr. Hussey is, of course, an agent of the United States Government, but he is not an agent of the United States Army, and that he was conducting an investigation for his own purposes, and he was using methods which were not illegal in conducting that investigation. What he did was proper, and this ruling, I want to emphasize, is applicable only to the handwriting exemplars.

In due course, the appellant's signature on the waiver certificates, the handwriting exemplars recorded on the Secret Service forms, and the various forms in his personnel file were compared with the signature appearing on the altered check, which had been made out to the appellant as payee for the amount of $104. At some point, the amount was altered to $704. A qualified expert expressed the opinion that each sig-

---

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831; *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

nature was made by the same author. Appellant testified that the altered check had been either lost or stolen and, therefore, he still had a claim for the original amount of the check.

The exact date trial defense counsel became involved in the case does not appear in the record. However, while he objected to the admission of the original waiver certificate executed on June 14, defense counsel did not assert the lack of notification of the interview as a basis for its exclusion. This issue was raised in his objection to the evidence derived from the June 30 interview by the Secret Service agent. Thus, we assume, for the purposes of this appeal, that defense counsel became involved prior to June 30, but after June 14. When the Secret Service agent was asked by defense counsel why he had not contacted him prior to interviewing appellant, the agent responded that "it's not my normal procedure to contact any defense attorney." While this response is subject to various interpretations, we conclude that the agent was aware appellant was represented by counsel in connection with the original charge involving the sale of marijuana. Accordingly, the issue, as now presented to us, is whether the Secret Service agent was required to notify counsel on a matter unrelated to the offense giving rise to the existing attorney-client relationship.

In *United States v. McOmber, supra* at 383, the Court held:

> that once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code.

*McOmber* involved a military investigation of the same offense which necessitated the appointment of defense counsel. We extended the *McOmber* mandate to apply to an accused who had requested counsel during an interview connected with a military investigation, thereby terminating the interview, but who, at a later time, was interviewed again about a different, yet related offense. His appointed counsel was not notified of the second interview and, thus, was not present. *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976). We distinguished *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), which upheld a second interview after an accused asserted his right to remain silent, as follows:

> Furthermore, unlike *Mosley*, the appellant had asserted his right to counsel and the investigator ignored this relationship between appellant and his counsel. In *McOmber*, the concurring opinion noted that the lower Federal courts had permitted the interrogation of a suspect without notification to his counsel but the military cases were " 'squarely in the opposite direction.' " 1 M.J. at 383 (Cook, J., concurring). In any event, *McOmber* was predicated on an accused's statutory right to counsel as set forth in Article 27 and not the Sixth Amendment right. Thus, even assuming arguendo, the doctrine of *Mosley*, which involved a right to remain silent rather than a right to counsel, is interpreted in a manner to also permit an interrogation without notice to counsel, it would not be controlling.

*United States v. Lowry, supra* at 59–60 (footnote omitted).

As the procedural requirements imposed in furtherance of Articles 27 and 31, UCMJ, 10 U.S.C. §§ 827 and 831, respectively, differ from those imposed by the Fifth and Sixth Amendments of the Constitution of the United States, our inquiry must focus on whether military or civilian standards are applicable to the Secret Service agent involved in this case. In *United States v. Penn*, 18 U.S.C.M.A. 194, 39 C.M.R. 194 (1969), the Court was required to make a similar determination regarding the applicability of Article 31 to a Secret Service agent who interviewed an accused in military custody as to offenses involving United States Treasury checks. That interview was not preceded by Article 31 warnings and produced handwriting exemplars. The applicable standard, civilian or military, was important because no preliminary warnings

were required under the provisions of the Fifth Amendment,[3] but they were required by Article 31 of the Uniform Code. *Compare Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *with United States v. White*, 17 U.S.C.M.A. 211, 38 C.M.R. 9 (1967). We affirmed the law officer's ruling admitting the exemplars because the evidence of record established that, while concurrent military and civilian investigations had been conducted, Article 31 was inapplicable as the "Secret Service investigation was independent and separate from the military investigation,"and the agent was not subject to the Uniform Code. *United States v. Penn, supra* at 202, 39 C.M.R. at 202. *See United States v. Holcomb*, 18 U.S.C.M.A. 202, 39 C.M.R. 202 (1969); *United States v. Murphy*, 14 U.S.C.M.A. 535, 34 C.M.R. 315 (1964).

■ In the present case, it is apparent that investigation of an altered United States Treasury check is a routine function of the Secret Service. That agency was notified promptly when the alteration involving appellant was discovered, and one of its agents initiated an investigation of the matter. Thus, it is clear that an independent civilian investigation was involved. Although appellant was in military custody and was ultimately tried by a court-martial rather than a civilian court, the character of a particular contact with a specific investigator is determined by the circumstances surrounding that contact. The ultimate disposition of the case is not controlling. *United States v. Bell*, 7 M.J. 108 (C.M.A. 1979); *United States v. Jones*, 6 M.J. 226 (C.M.A.1979).

■ The *McOmber-Lowry* rule was promulgated to give effect to an accused's Article 27 and 31 rights. However, as the evidence here reflects that a civilian investigation was involved, we must look to the civilian authorities to ascertain the propriety of the Secret Service agent's interview of appellant. *United States v. Harris*, 7 M.J. 154 (C.M.A.1979).

■ As the evidence in dispute involves handwriting exemplars, the agent's conduct did not violate any Sixth Amendment right. *Gilbert v. California, supra; United States v. Wade, supra*. We believe the Supreme Court's comments in *Gilbert v. California, supra*, 388 U.S. at 267, 87 S.Ct. at 1953, bear repeating:

> *Second.* The taking of the exemplars was not a "critical" stage of the criminal proceedings entitling petitioner to the assistance of counsel.

■ Subsequent cases have emphasized that, even where the procedural requirements of *Miranda* are applicable, that case established no independent right to counsel, but, instead, gave "full effectuation of the privilege against self-incrimination." *Johnson v. New Jersey*, 384 U.S. 719, 729, 86 S.Ct. 1772, 1779,16 L.Ed.2d 882 (1966). The Supreme Court observed in *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972), that the procedural requirements imposed by *Miranda* were "based exclusively upon the Fifth and Fourteenth Amendment privilege against compulsory self-incrimination." *See Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2363, 41 L.Ed.2d 182 (1974). Here, the Secret Service agent was involved in the initial stage of an altered check investigation and no adversary criminal proceedings had begun. Accordingly, appellant was not entitled to counsel under either the Sixth Amendment or the requirements of *Miranda. Kirby v. Illinois, supra; see also United States v. Ash*, 413 U.S. 300, 303 n. 3, 93 S.Ct. 2568, 2570 n. 3, 37 L.Ed.2d 619 (1973); *Moore v. Illinois*, 434 U.S. 220, 226, 98 S.Ct. 458, 463, 54 L.Ed.2d 424 (1977).

■ In *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), the Supreme Court held that the Fourth Amendment was inapplicable to a grand jury directive to a defendant to produce a handwriting exemplar and the Government was not required to make a preliminary showing of reasonableness. *Accord, United*

---

**3.** U.S.Const. amend. V.

*States v. Euge,* 444 U.S. 707, 100 S.Ct. 874, 881 n. 13, 63 L.Ed.2d 141 (1980). *See United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). Appellant was properly apprehended on an unrelated charge. Thus, we need not address when and under what circumstances a subject may be detained for the purpose of requiring him to produce handwriting exemplars. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). Accordingly, we decline to extend the *McOmber-Lowry* requirement to an accused represented by counsel in regard to an unrelated offense. Articles 27 and 31 are inapplicable and no Constitutional rights are involved. *See United States v. Littlejohn,* 7 M.J. 200 (C.M. A.1979); *United States v. Turner,* 5 M.J. 148, 149 (C.M.A.1978) (Cook, J., concurring in part and dissenting in part). Furthermore, we note that a requirement of the kind urged by defense counsel here was rejected in *United States v. Newell,* 578 F.2d 827 (9th Cir. 1978); *cf. Brewer v. Williams,* 430 U.S. 387, 405–6, 411, 97 S.Ct. 1232, 1245, 51 L.Ed.2d 424 (1977).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.