**UNITED STATES**

v.

**Larry W. FITZGERALD, 413 15 2511,
Lance Corporal (E–3), U. S.
Marine Corps.**

**NCM 79 1257.**

U. S. Navy Court of Military Review.

Sentence Adjudged 22 March 1979.

Decided 15 Aug. 1980.

LT David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

Before BAUM, Senior Judge, and PRICE and EDWARDS, JJ.

BAUM, Senior Judge:

Appellant has assigned one error before this Court, that the military judge improperly admitted testimony relating to a confession and the real evidence derived therefrom. This assignment bears on an alleged assault which occurred on 22 January 1979 and an interrogation and consent search conducted the next day by an agent of the Naval Investigative Service. That same agent had interrogated appellant with respect to a different assault offense on 15 December 1978. After advising appellant of his rights, including the right to counsel on each occasion, the agent obtained a statement each time and a consent to search after the last statement was given. The following transpired on cross–examination of this agent:

Q. Did you know that Lance Corporal FITZGERALD was pending another possible disciplinary action the second time you talked to him, were you aware of the 15 December incident when you talked to him the second time giving him advise [sic] of his rights?

A. Yes, sir.

Q. Were you aware at that time that he had been detailed a lawyer?

A. In that case probably yes, sir.

(R. 44). Then, on redirect, the following was elicited:

Q. Mr. BRUCE, did you in fact know that there was an attorney–or if there was an attorney representing Lance Corporal FITZGERALD when you talked to him on the 23rd of January?

A. Sir, I really can't recall; I believe he had an attorney but I wasn't sure or I just don't recall who it was exactly.

Q. Did you know that he had one at all?

A. Yes, I believe I did.

Q. How would you know that?

A. That I can't recall, sir.

Q. Had any attorney–had there been any communication to your office by any authority informing you that Lance Corporal FITZGERALD had an attorney?

A. That I don't recall, sir.

Q. Did Lance Corporal FITZGERALD at any time indicate to you that he had an attorney?

A. I don't recall that either, sir.

Q. If you knew an accused had an attorney, what would you do?

A. Sir, if I was questioning him for the same incident I wouldn't even talk to the accused if he stated he would talk to an attorney, *but since this was a separate incident in itself–additional.* I would just go through my regular advisement [sic] of his rights and ask him if he waives his right to consult with a attorney.

TC: Thank you, no further questions.

(R. 45) (emphasis added). Later, the agent was recalled by the trial counsel and asked again about his awareness that the accused was represented by counsel on 23 January 1979. At that time, the witness indicated he was not positive, but believed he was first aware of it after the 23rd.

Based on the Court of Military Appeals decision in *United States v. Lowry,* 2 M.J. 55 (C.M.A.1976), the defense at trial objected to the statement and search and seizure of 23 January 1979. The judge overruled the objection and admitted the testimony and exhibit. Appellant in his assignment of error has reasserted his contention that this evidence is inadmissible. In resolving this assignment we must first determine whether the investigator was aware that appellant had an attorney at the time of the second interview. We believe the Naval Investigative Service agent was aware that appellant had a lawyer on 23 January 1979 and thought that he could interrogate appellant without notifying counsel because the suspected offense "was a separate incident in itself–additional", as he said on redirect examination. We find as fact that the agent was aware that appellant had an attorney when the interview of 23 January 1979 was conducted. Having reached this determination, we must consider, next, the subject of the investigation in light of our reading of the recent case of *United States v. McDonald,* 9 M.J. 81 (C.M.A.1980).

In *McDonald,* Judge Cook, writing for the Court, summarized the development of military law in this area. He noted that in *United States v. McOmber,* 1 M.J. 380, 383 (C.M.A.1976), the Court of Military Appeals held:

> that once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(*d*) of the Uniform Code.

*United States v. McDonald, supra* at 83. Judge Cook then went on to state:

> *McOmber* involved a military investigation of the same offense which necessitated the appointment of defense counsel. We extended the *McOmber* mandate to apply to an accused who had requested counsel during an interview connected with a military investigation, thereby terminating the interview, but who, at a later time, was interviewed again about a *different, yet related offense. . . .*
> *United States v. Lowry, 2 M.J. 55 (C.M.A. 1976).*

*Id.* (emphasis added).

After addressing the issues raised in *McDonald,* Judge Cook went on to provide guidance with respect to such matters, declining "to extend the *McOmber–Lowry* requirement to an accused represented by counsel in regard to an *unrelated offense.*" *Id.* at 85 (emphasis added). In light of this pronouncement by our highest military court, we deem the rule to be that an investigator, though aware of representation by counsel, is not required to notify that counsel if the interrogation pertains to an unrelated offense. In the instant case, we find that the investigation conducted on 23 January 1979 was with respect to an unrelated offense. Accordingly, we conclude that there was no obligation to inform counsel. Appellant's assignment of error is, therefore, rejected and the findings of guilty are affirmed.

In fulfilling our responsibility under Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c) which provides that we may affirm only such part or amount of the sentence as we find correct in law and fact and which we determine, on the basis of the entire record, should be approved, we have considered all matters in extenuation and mitigation of the offenses. We do not believe an unsuspended punitive discharge is

appropriate in this case in light of these matters. In reaching this conclusion we note that these same factors undoubtedly prompted the military judge to recommend suspension of the bad–conduct discharge. The bad–conduct discharge is set aside. Only so much of the sentence as provides for confinement at hard labor for 5 months, forfeiture of $150 per month for 5 months and reduction to pay grade E–1 is affirmed.

Judge PRICE concurs.

EDWARDS, Judge (concurring/dissenting):

I agree with my brothers that the military judge properly admitted testimony relating to a confession and the real evidence derived therefrom.

I dissent, however, believing that in this case, considering all the circumstances and in particular the fact that appellant was convicted of two assaults with a dangerous weapon separated by 38 days, the sentence including a bad–conduct discharge is appropriate. *See United States v. Usry*, 9 M.J. 701 (N.C.M.R.1980).