UNITED STATES, Appellee,

v.

Leonard E. SUTHERLAND, Seaman Recruit, U.S. Navy, Appellant.

No. 44123.

NMCM 81 3049.

U.S. Court of Military Appeals.

Oct. 3, 1983.

For Appellant: *Lieutenant Stephen R. Cochell, JAGC, USNR* (argued); *Lieutenant Commander Georgia L. Winstead, JAGC, USNR* (on brief); *Major James P. Axelrod, USMC.*

For Appellee: *Lieutenant Sandra R. Ganus, JAGC, USNR* (argued); *Commander*

*W.J. Hughes, JAGC, USN, Lieutenant Darrell M. Grams, JAGC, USNR* (on brief); *Major Charles Wm. Dorman, USMC.*

*Opinion of the Court*

PER CURIAM:

A special court-martial convicted appellant, contrary to his pleas, of conspiracy to commit forgery, unauthorized absence (3 specifications), disrespect toward a superior petty officer, treating a superior petty officer with contempt, wrongful appropriation, and receiving stolen property (2 specifications), in violation of Articles 81, 86, 91, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, 891, 921, and 934, respectively. His approved sentence extends to a bad-conduct discharge, confinement at hard labor for 3 months, a fine of $1500, and, in the event the fine is not paid, additional confinement at hard labor for 3 months. We granted review of the following assignment of error:

> WHETHER A[N] ... INVESTIGATIVE ... AGENT IS REQUIRED TO NOTIFY ARTICLE 27(b) COUNSEL PRIOR TO INTERROGATION OF AN ACCUSED IN A LEGAL HOLD STATUS PENDING A SPECIAL COURT-MARTIAL ON UNRELATED CHARGES?

On September 24, 1980, appellant pleaded guilty at a summary court-martial to charges of possessing marijuana and lysergic acid diethylamide, in violation of Article 92, UCMJ, 10 U.S.C. § 892. These offenses occurred on May 1, 1980. During at least some portion of the time charges were pending, appellant was represented by a Lieutenant Clark.[1] Clark was successful in negotiating the pretrial agreement which brought the charges to the summary court-martial. The convening authority assented to the agreement on August 26, 1980.

About the time the agreement was being concluded, appellant was actively being investigated for certain of the charges herein.

---

1. Lieutenant Clark was not present during the summary court-martial hearing; another officer assisted appellant there as an advisor only.

The offenses for which he ultimately was tried were alleged to have occurred between July and November 1980. All parties agree that there was no connection between these charges and those of the prior court-martial. It is undisputed that Lieutenant Clark at no time was assigned or undertook to represent appellant on any of the charges in the instant court-martial.

During the months of August and September, 1980, Detective Brennan, of the Naval Station, San Diego, Security Department, Investigation Section, spoke to appellant many times regarding the instant charges. During the initial encounters, appellant declined to discuss the matter at all. However one day, on September 12, 1980, appellant agreed to be interviewed. As in most of the previous encounters, appellant initiated the contact by coming to Brennan's office to inquire about the status of his other case and certain of his property which had been confiscated. After waiving his rights, appellant made an incriminating statement which Brennan tape-recorded.

Brennan knew at the time that appellant was assigned to some sort of "legal hold" barracks, or was on some form of restriction. Brennan testified that he inquired about appellant's legal status and was informed that the legal problems had been resolved. According to Brennan, appellant stated that he was not then being represented by an attorney.

Appellant denied ever telling Brennan any such thing. Indeed, he claimed to have specifically referred Brennan to Clark regarding the confiscated property. Nevertheless, at trial appellant admitted that he "didn't want an attorney present at that interview." Brennan did not secure Clark's permission to speak to appellant.

Brennan saw appellant again on September 23, 1980, one day before appellant's summary court-martial was held. By then, appellant was in the brig.[2] Brennan presented appellant with a copy of the September 12 interview, which had subsequent-ly been transcribed, and asked appellant to sign it; appellant complied. No interrogation was conducted, and Brennan did not notify counsel of the meeting.

At trial, appellant moved to suppress evidence of his pretrial statement. He argued that his attorney-client relationship with Clark did not terminate until sometime after the 23 September signing and that Brennan knew, or reasonably should have known, he was represented by counsel. Therefore, appellant contended, Brennan was obligated to obtain Clark's permission before speaking with him. The military judge denied the motion on the grounds that appellant was not represented by Clark with respect to offenses which were the subject of the interview and that, therefore, there was no requirement that he be notified. The Court of Military Review affirmed summarily. *United States v. Sutherland,* NMCM 81 3049 (June 28, 1982) (unpublished opinion).

In *United States v. McOmber,* 1 M.J. 380 (C.M.A.1976), and *United States v. Lowry,* 2 M.J. 55 (C.M.A.1976), we established a rule that military investigators could not question servicemembers suspected of crime without obtaining permission from their attorney, if the investigators were aware that counsel had been appointed or retained. This ruling was based on Article 27, UCMJ, 10 U.S.C. § 827, which provides for appointment of military counsel generally. We reasoned that:

> To permit an investigator, through whatever device, to persuade the accused to forfeit the assistance of his appointed attorney outside the presence of counsel would utterly defeat the congressional purpose of assuring military defendants effective legal representation without expense.

*United States v. McOmber, supra* at 383.

Recently, the President expanded this rule to include not only the situation where the interrogator has actual knowledge of

---

2. Though we have found no explanation for appellant's confinement in the record, it is likely that it was connected with an unauthorized absence (one of the charges herein) which occurred on September 17, 1980.

the attorney-client relationship, but also where he reasonably should be so aware. Mil.R.Evid. 305(e).[3] However, the Rule purports to limit the notice requirement to cases where counsel represent suspects with respect to offenses which are the subject of the proposed interrogations.

We reached a somewhat similar conclusion in *United States v. McDonald,* 9 M.J. 81 (C.M.A.1980). McDonald had been apprehended by military authorities for an alleged sale of marijuana and was assigned military counsel. A United States Secret Service agent, operating independently of military authorities, interrogated McDonald regarding an unrelated altered checks charge. The agent also obtained handwriting exemplars from McDonald. No effort was made to obtain permission from McDonald's military defense counsel prior to the contact. We rejected the invitation "to extend the *McOmber-Lowry* requirement to an accused represented by counsel in regard to an unrelated offense," and upheld the reception of evidence obtained by the agent. 9 M.J. at 85. Since a civilian [4] investigation was involved, we tested legality only in terms of the Sixth Amendment right to counsel. In so doing, we distinguished *McOmber* and *Lowry* which had involved interrogations conducted by military investigators, and sought "to give effect to an accused's Article 27 and 31 rights." *United States v. McDonald, supra* at 84.

In the case at bar, we must decide whether the principle of *McDonald* applied to Brennan's interview of appellant. By emphasizing in *Lowry* that we were "unwilling to make subtle distinctions that require the separation of offenses occurring within the same general area within a short period of time," 2 M.J. at 59, we seemed to suggest, by negative implication, that when offenses were not closely related in some manner the *McOmber-Lowry* rule was inapplicable. Moreover, Article 27 does not indicate that a defense counsel detailed to represent an accused before a general or special court-martial thereby assumes responsibility for representing him on unrelated offenses and charges. Absent such responsibility, there is no statutory basis to require that defense counsel be notified as to an interrogation of an accused concerning those unrelated matters. Of course, the investigator runs the risk that later a court-martial will perceive some relationship between the pending charges and the subject of the investigation, in which event *Lowry* will apply.

In the case at bar, it is clear that Detective Brennan's interview of appellant about offenses occurring between July and November 1980 had no relationship to the drug offenses in May 1980 as to which Lieutenant Clark was representing appellant. Since the Sixth Amendment was not infringed, *see United States v. McDonald, supra,* and since there was no violation of Article 27 or other codal provisions, the military judge properly admitted the evidence now in question. Mil.R.Evid. 305(e) governs; and, under that Rule, the statement to Detective Brennan was admissible.

Accordingly, the decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

---

3. The Military Rules of Evidence were in effect at the time of appellant's trial.

4. Indeed, outside the military, there appears to be no fixed Federal rule that an investigator must notify counsel, even when interrogating an accused about the specific charges against which counsel was obtained to defend him. *Brewer v. Williams,* 430 U.S. 387, 405–06, 97 S.Ct. 1232, 1242–43, 51 L.Ed.2d 424 (1977).