**UNITED STATES, Appellee,**

v.

**Charles W. SPENCER, Private First Class, U.S. Marine Corps, Appellant.**

No. 45819.
NMCM 82 2010.

U.S. Court of Military Appeals.

Jan. 28, 1985.

For Appellant: *Lieutenant Louis F. Sadler*, JAGC, USNR (argued); *Lieutenant Commander Richard K. Delmar*, JAGC, USN (on brief); *Commander David C. Larson*, JAGC, USN.

For Appellee: *Lieutenant Colonel T. H. Eagen*, USMC (argued); *Commander W. J. Hughes*, JAGC, USN, and *Lieutenant Michael P. Cogswell*, JAGC, USNR (on brief).

EVERETT, Chief Judge:

A military judge sitting as a special court-martial tried the accused on charges

that on January 16, 1981, he wrongfully possessed 11 grams of marihuana; that on March 7, 1981, he willfully damaged military property of the United States; and that on March 21, 1981, he violated Navy Regulations by wrongfully possessing, transferring, and selling 35 dosage tablets of lysergic acid diethylamide (LSD), in violation of Articles 134, 108, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 934, 908, and 892, respectively. In accordance with his pleas, Spencer was convicted of willfully damaging military property and acquitted of possessing marihuana. Also, the judge found him guilty of the lesser-included offense of attempting to transfer LSD, in violation of Article 80, UCMJ, 10 U.S.C. § 880. The adjudged and approved sentence was a bad-conduct discharge, 3 months' confinement, forfeiture of $200.00 pay per month for 6 months, and reduction to the grade of E-1. The Court of Military Review upheld the accused's conviction and sentence. Thereafter, we granted review on this issue:

> WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE MOTION TO SUPPRESS PROSECUTION EXHIBIT 2, A STATEMENT MADE BY THE APPELLANT TO A CID INVESTIGATOR ON 29 APRIL 1981.

## I

On March 10, 1981, Spencer was interviewed by Sergeant Johnson, a veteran of the Criminal Investigation Department (CID), Marine Corps Base, Camp Lejeune, about damage to a pool table which had occurred three days earlier. The accused made several oral admissions; but when he was asked to sign the written statement which Johnson prepared, he declined to do so and stated that he wanted to see a lawyer. A week later, however, the accused returned to the CID office and told Sergeant Johnson that he had not seen a lawyer, did not wish to see a lawyer, and wanted to review and sign the statement (pros. ex. 1).

After the statement had been signed, Sergeant Johnson prepared his report and forwarded copies to appropriate authorities. On March 26, the commander of Headquarters Battalion—the organization to which the accused was assigned—requested the staff judge advocate of the Second Marine Division to prepare charges alleging the accused's willful damage to the pool table and his wrongful possession of marihuana.

On April 1, 1981, these two requested charges were drafted; on April 8, they were sworn to; and the next day a copy of the charge sheet reached the office of defense counsel at Camp Lejeune. On April 10, Captain Arthur, who then was acting as Chief Defense Counsel, assigned Spencer's case to himself. On April 21, a copy of the charge sheet was served on the accused by Lieutenant Dugdale, who was the legal officer of Headquarters Battalion. A few days later, Arthur interviewed the accused about the charges against him.

In late April, as the result of an entirely unrelated investigation, Sergeant Johnson decided to interview Spencer concerning possible drug involvement. Up to that time he had never been informed about the incident in January which had resulted in Spencer's being charged with wrongful possession of marihuana. Moreover, Johnson had not been advised as to what action, if any, had resulted from his report on the willful damage to the pool table; he was unaware either that court-martial charges were pending against the accused or that Captain Arthur was representing Spencer as to any matter.

When on April 28 Sergeant Johnson requested Spencer's first sergeant to send him to the CID office for an interview, the first sergeant replied that he could not locate the accused and thought that he might be absent without authority. Johnson asked that, whenever the accused returned, he should contact the CID. The next day the accused called Sergeant Johnson around 7:30 a.m.—apparently after learning from someone that the CID

wished to see him. An interview was scheduled for that very day.

Soon after this telephone conversation between the accused and Johnson, Captain Arthur called Lieutenant Dugdale at Headquarters Battalion to ask that Spencer be sent to his defense counsel's office for further discussion of the pending court-martial. Dugdale informed Arthur that the CID also was seeking to interview Spencer; and, in response to this news, Captain Arthur specifically told Dugdale

> that I did not want PFC Spencer going to CID without talking to me first, and I asked him if he would try to get ahold of PFC Spencer and send him up to talk to me. And he told me that that was what he would attempt to do ....

Captain Arthur, who then was involved in a trial, did not immediately contact the CID to communicate to them his objection to their interviewing his client. Furthermore, Captain Arthur did not get in touch with the accused at that time.

At about 12:50 p.m. on April 29, the accused met with Johnson at the CID office. Spencer was fully readvised of his rights, including his right to have counsel, but Sergeant Johnson did not ask him if he already had a lawyer. After the accused waived his rights, Sergeant Johnson obtained a statement (pros. ex. 2) which related to the commission of LSD offenses on March 21. At trial, this statement was the target of a defense motion to suppress.

In support of the motion, Captain Arthur testified that, although he "didn't know anything about CID or the LSD charge or anything" before talking to Lieutenant Dugdale on April 29, "I felt like I was his [the accused's] lawyer, and I would be wanted to be made a part of anything that affected his case. I was his lawyer." The defense claimed, of course, that Johnson had violated Mil.R.Evid. 305(e) when he obtained a statement from Spencer on April 29 without the knowledge or consent of Captain Arthur.

The military judge denied the motion to suppress on two grounds. One was that, because Captain Arthur had only been assigned to represent the accused on the original charges of damage to military property and possession of marihuana, there was no requirement under Mil.R.Evid. 305(e) that notice be given to him before taking a statement from Spencer about a completely unrelated offense. Secondly, the judge concluded that, if notice to the defense counsel was required by Mil.R.Evid. 305(e), this requirement had been satisfied. Arthur had, in fact, been notified by Lieutenant Dugdale, the battalion legal officer, of the CID's plan to interrogate Spencer; and, in the trial judge's view, the burden then fell upon the defense counsel to inform investigators that he desired to be present when the accused was questioned. Inasmuch as the judge found that Captain Arthur had not contacted Sergeant Johnson or the CID, this burden had not been met.

## II

Prior to the Military Rules of Evidence, this Court—relying on Article 27 of the Uniform Code, 10 U.S.C. § 827—established the rule that an investigator may not question a servicemember suspected of a crime without obtaining permission from his attorney if the investigator is aware that counsel has been appointed or retained. *United States v. McOmber*, 1 M.J. 380 (C.M.A. 1976); *see United States v. Lowry*, 2 M.J. 55 (C.M.A. 1976). However, this rule applied only to cases where counsel was representing the suspect with respect to the matter under investigation or a related charge. *See United States v. Dowell*, 10 M.J. 36 (C.M.A. 1980), and *United States v. McDonald*, 9 M.J. 81 (C.M.A. 1980). As noted recently in *United States v. Sutherland*, 16 M.J. 338 (C.M.A. 1983), "[w]e rejected the invitation 'to extend the *McOmber-Lowry* requirement to an accused represented by counsel in regard to an unrelated offense,' ... " *Id.* at 340.

Mil.R.Evid. 305(e) imposes similar limitations on interrogation. It provides:

> When a person subject to the Uniform Code of Military Justice who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained

by the accused or suspect with respect to that offense, the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed.

This Rule may be more restrictive of a questioner than *McOmber* and *Lowry*: The investigator must notify counsel of the intended interrogation if he "reasonably should know that counsel either has been appointed for or retained by the accused or suspect," while under our precedents it is arguable that this obligation existed only if the investigator actually knew of the representation. *See United States v. Roy*, 4 M.J. 840 (A.C.M.R. 1978); *see United States v. Green*, 7 M.J. 687 (N.C.M.R. 1979).

■ The difficulty that the accused confronts in this case stems from the absence of any evidence to show that Sergeant Johnson either knew or should have known that Spencer was represented by a lawyer with respect to the LSD offenses under investigation on April 29. In an attempt to fill the gap, the appellate defense counsel points to the fact that the LSD offenses later were tried together with the willful damage and marihuana offenses and argues that, accordingly, they all should be viewed as related for purposes of Mil.R. Evid. 305(e). Thus, if Sergeant Johnson should have known that Captain Arthur was representing the accused as to the willful-damage charge, he would have been required to contact the lawyer before interviewing Spencer about the LSD offenses. We disagree with this construction of the Rule—a rule which we believe is concerned with the relation between offenses at the time of interrogation, rather than at some later time. Thus, two factually unrelated offenses are not related for purposes of Mil.R.Evid. 305(e) even though at some later time they are tried together. If the offenses are otherwise unrelated, an investigator may interview an accused as to one offense without contacting the lawyer who is representing him only as to the other offense.

■ The accused also contends that on the morning of April 29 Captain Arthur

had begun to act as his counsel with respect to the LSD offenses and that Sergeant Johnson had notice of this fact. This contention relies on the conversation between Arthur and Lieutenant Dugdale, the legal officer of the accused's battalion. According to the accused, when Captain Arthur informed Dugdale that he did not wish for Spencer to be interviewed by the CID, he had begun to serve as the accused's counsel with respect to any offense which was the subject of that interview—even though the lawyer did not then know what offenses were being investigated. Moreover, this notice to Dugdale, the battalion legal officer, should be imputed to Sergeant Johnson for purposes of Mil.R. Evid. 305(e).

The Government rejoins that, regardless of any intent or action by Captain Arthur to represent the accused as to offenses being investigated by the CID on April 29, he never was the accused's counsel as to those offenses, because he was not authorized by service regulations to act in this capacity. In short, Captain Arthur was only permitted to represent Spencer as his counsel with respect to those charges already referred for trial by court-martial—and as to which he had been specifically detailed as defense counsel. Under this view, any effort by Captain Arthur to represent the accused as to the offenses being investigated on April 29 was a nullity for purposes of Mil.R.Evid. 305(e).

We recognize that traditionally military legal assistance programs have not provided legal advice to servicemembers concerning possible criminal charges and that service directives specify the circumstances under which military lawyers may represent servicemembers. However, we also conclude that Mil.R.Evid. 305(e) should be applied liberally and that, when a military lawyer purports to be representing a servicemember in connection with the investigation or trial of a criminal offense, he should be provided notice of an intended interview, even though the investigator may be unsure whether the lawyer has authority for that representation. Investigators should not be encouraged to omit notice in the hope that later the purported "counsel's"

authority to represent his client may be successfully challenged. Moreover, we believe that it would be profitless for trial and the accused courts to spend time in deciding exactly when a military lawyer is authorized by service directives to be counsel for a servicemember whom he claims to represent.

However, even if we assume from his rather ambiguous conversation with Lieutenant Dugdale that Captain Arthur was Spencer's "counsel" on April 29 with respect to the investigation of the LSD offenses, the defense argument still has a fatal flaw. Although Dugdale was legal officer for the Headquarters Battalion, no reason exists to impute his knowledge to Sergeant Johnson. The record of trial gives no indication of any service directive, custom, or practice whereunder someone in Dugdale's position would have had any duty or occasion to transmit to Sergeant Johnson information about Captain Arthur's representation of the accused.

Since Captain Arthur's conversation with Lieutenant Dugdale did not provide constructive notice to Sergeant Johnson, the accused is left with no basis for establishing a violation of Mil.R.Evid. 305(e). When he interviewed Spencer on April 29, Sergeant Johnson was completely unaware of the marihuana offense with which the accused had been charged. Moreover, Johnson had not been informed of any action that had been taken on his investigative report, so he was unaware that the charge of willful damage to government property had been referred to a special court-martial. That charge was not so serious that it inevitably would have been referred to a special or general court-martial, so Sergeant Johnson had no reason to disregard the possibility that the willful-damage offense might have been referred only to a summary court-martial or disposed of administratively or by nonjudicial punishment. In that event, it would not have been unlikely that Spencer—who had declined counsel when interviewed by Sergeant Johnson in March—might have chosen to waive the assistance of counsel in connection with the disposition of the willful-damage charge. In sum, Sergeant

Johnson lacked knowledge—or even constructive notice—that court-martial charges were pending against the accused or that he was being represented by a military defense counsel with respect to the offense that Johnson had investigated in March.

Even if Sergeant Johnson had known about the pending court-martial charges and Captain Arthur's representation of the accused, he also would have known that military defense counsel usually are appointed to represent an accused servicemember only with respect to particular charges that are under investigation or that have been referred to court-martial. Thus, absent other information, he would not have anticipated that Captain Arthur was counsel for Spencer with respect to investigation of the LSD offenses.

Finally, the accused argues that on April 29 Sergeant Johnson should have asked him whether he already had a lawyer to represent him in connection with the investigation of the LSD offense. If that question had been posed, it probably would have garnered a negative answer. In any event, under the circumstances of this case, we do not perceive adequate grounds to impose this burden on an investigator. Although Mil.R.Evid. 305(e) is protective of an accused, we believe that it is intended to leave with the suspect the responsibility for informing the investigator that he already has counsel to represent him with respect to the matter under investigation.

### III

No error occurred in the admission of prosecution exhibit 2 in evidence. Accordingly, the decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge FLETCHER concurs.

COX, Judge (concurring):

I concur. A review of the record satisfies me that the requirements of Mil.R. Evid. 305(e) and of Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, were met. Therefore, the accused's statement was admissible.