UNITED STATES, Appellee,

v.

Gina R. KENDIG, Airman First Class
U.S. Air Force, Appellant.

No. 67,311.
ACM S28190.

U.S. Court of Military Appeals.

Argued Oct. 5, 1992.
Decided Feb. 25, 1993.

For Appellant: *Captain Marc A. Fox* (argued); *Major Marilyn A. Gordon* (on brief); *Colonel Jeffrey R. Owens.*

For Appellee: *Major Paul H. Blackwell, Jr.* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief); *Lieutenant Colonel Jeffery T. Infelise.*

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was convicted of making false official statements under Article 107, Uniform Code of Military Justice, 10 USC § 907, and was sentenced to a bad-conduct discharge, confinement and forfeiture of $450 pay per month for 2 months, and reduction to E1. The convening authority approved the sentence, and the Court of Military Review affirmed in an unpublished opinion dated July 16, 1991. We granted review of the following issues:

### I

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING APPELLANT'S ADMISSIONS MADE TO THE AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS (AFOSI) IN THE ABSENCE OF HER ATTORNEY.

### II (Specified)

WHETHER THE MILITARY JUDGE ERRED WHEN HE ADMITTED STATEMENTS MADE BY APPELLANT AFTER INVESTIGATORS SHOULD HAVE KNOWN SHE WAS A SUSPECT BUT FAILED TO INFORM HER OF HER RIGHT TO CONSULT WITH COUNSEL PRIOR TO SUBMITTING TO A POLYGRAPH EXAMINATION.

We conclude that the military judge did not err based upon our review of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *McNeil v. Wisconsin*, — U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); Mil.R.Evid. 305(e), Manual for Courts–Martial, United States, 1984; and our recent decision in *United States v. Sager*, 36 MJ 137 (CMA 1992).

### FACTS

On January 31, 1989, appellant's off-base apartment was searched as part of a drug investigation. AFOSI agents seized various "drug-related" items from her apartment. In early April 1989, appellant was notified that she was charged with use and possession of marijuana and that her commander intended to adjudicate the charges against her under Article 15, UCMJ, 10

USC § 815, which could result in imposition of nonjudicial punishment.

On Monday, April 17, 1989, appellant elected to consult with a military lawyer, Captain Jeffries; agreed to proceedings under Article 15; received an announcement of Article 15 punishment; and waived appeal. Appellant's Article 15 punishment included a reduction of one grade and forfeiture of $450.00 pay per month for 2 months, execution of part of the forfeiture being suspended for 6 months. Later that same day, appellant took one other action which ultimately led to the court-martial charges at issue: She filed a report with Staff Sergeant Evans, Desk Sergeant, 435th Security Police Squadron, alleging that more than $3,000.00 worth of jewelry and compact discs had been stolen from her quarters during the AFOSI search in January. Appellant's allegations were recorded on AF Form 1169, entitled "Statement of Witness" and later became the basis for specification 1 of the Charge alleging that she made a false official statement.

Because appellant's allegations were against AFOSI agents from Rhein Main Air Base, an agent external to Rhein Main, Special Agent (SA) Gravlee, was appointed to conduct an investigation into appellant's allegations of police misconduct. On Monday, April 24, 1989, appellant made the same allegations to SA Gravlee which were again recorded on AF Form 1169, entitled "Statement of Witness" and which became the basis for specification 2 of the Charge alleging that she made a false official statement.

Also on April 24, 1989, SA Gravlee asked appellant, and appellant agreed, to take a polygraph examination concerning the allegations. Then, according to appellant, SA Gravlee called her in on Thursday, April 27, 1989, and again asked her if she would be willing to submit to a polygraph examination. Appellant agreed, and the examination was scheduled for the following day, Friday, April 28. On Friday, appellant signed a Consent to Polygraph Examination form before the examination was conducted, which included a rights advisement under the provisions of Article 31, UCMJ,

10 USC § 831, and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), took the polygraph examination, and admitted in a post-polygraph interview that her allegations were false.

Some additional facts are helpful to resolution of this case. At a pretrial session under Article 39(a), UCMJ, 10 USC § 839(a), appellant moved to suppress her post-polygraph statement. Testimony on the motion shows that before interviewing appellant on April 24, SA Gravlee and SA Broeking, the OSI Detachment Commander, discussed the necessity of informing Captain Jeffries about appellant's complaint and the investigation. SA Broeking called Captain Jeffries on April 24 and told him that appellant's allegations would be investigated and that SA Gravlee was going to interview appellant. SA Broeking also testified that he told Captain Jeffries that OSI was only concerned with the theft allegation and that appellant would not be questioned about drug activities. Additionally, SA Broeking testified that he told Captain Jeffries there was a possibility that appellant might be asked to take a polygraph examination at some point and that Captain Jeffries agreed to all of the above. Captain Jeffries agreed that SA Broeking told him about the investigation and that appellant would be interviewed, but unequivocally denied that SA Broeking ever mentioned to him the possibility of a polygraph examination.

## DISCUSSION

This case concerns admissibility of three "statements" by appellant about items allegedly stolen from her off-base apartment by AFOSI agents during a search on January 31, 1989. The first statement is appellant's initial averment on April 17, 1989, of police misconduct. The second statement is appellant's second averment, on April 24, 1989, of police misconduct. The third statement is appellant's post-polygraph admissions on April 28, 1989, that she had lied about the police misconduct.

## I

■ In order to facilitate our discussion, we will first resolve several preliminary matters with respect to these three statements. As to appellant's first statement, we hold there was no deprivation-of-counsel violation and no rights-warning violation because appellant spontaneously came forward to make her complaint. Therefore, we will focus our discussion on appellant's April 24, 1989, allegation of police misconduct to SA Gravlee and her April 28, 1989, post-polygraph statement.

■ Concerning appellant's second statement to SA Gravlee, appellant claims that she should have been treated as a suspect at that interview, rather than as a witness, and given her Article 31(b) warnings. It is axiomatic that "[o]nly servicemembers suspected of a crime must be given Article 31(b) warnings before official interrogation." *United States v. Morris,* 13 MJ 297, 298 (CMA 1982)(citing *United States v. Graham,* 21 USCMA 489, 45 CMR 263 (1972); *United States v. Henry,* 21 USCMA 98, 44 CMR 152 (1971)). "The test to determine if a person is a suspect is whether, considering all facts and circumstances at the time of the interview, the government interrogator believed or reasonably should have believed that the one interrogated committed an offense." 13 MJ at 298 (footnote omitted) (citing *United States v. Anglin,* 18 USCMA 520, 523–24, 40 CMR 232, 235–36 (1969)); *see also United States v. Hilton,* 32 MJ 393, 396 (CMA 1991); *United States v. Good,* 32 MJ 105 (CMA 1991); *United States v. Schake,* 30 MJ 314, 317 (CMA 1990); *United States v. Ravenel,* 26 MJ 344, 346 (CMA 1988). In this case, the government investigator, SA Gravlee, was brought from another command to investigate appellant's allegations of police misconduct. The first person interviewed by SA Gravlee was appellant, on April 24. Considering all the facts and circumstances, we conclude, as did the military judge that SA Gravlee did not suspect

appellant of making false statements until sometime after April 24, following interviews with other witnesses. Therefore, SA Gravlee was not required to advise appellant of her rights on April 24.[1]

■ Finally, with respect to appellant's third statement, appellant claims, as she did at trial, that SA Gravlee told her Captain Jeffries had agreed for her to take the polygraph examination. Such a claim presupposes that appellant would not have consented to take the polygraph examination had she not been allegedly "misadvised" by SA Gravlee. In support, appellant points to the disagreement between SA Broeking, the OSI Detachment Commander, and Captain Jeffries as to whether Captain Jeffries was advised that a polygraph examination of appellant was planned as part of the investigation into her police-misconduct allegations.

The judge specifically found as fact that: (1) "SA Broeking and Captain Jeffries disagree ... whether a polygraph was mentioned" during their April 24 telephone conversation; (2) SA Gravlee advised appellant on April 24 that Captain Jeffries agreed to allow the OSI to talk to appellant about her allegations of police misconduct but not about the drug incidents; and (3) SA Gravlee "did not advise" appellant "that Captain Jeffries had said it was okay to take a polygraph examination since no mention of an attorney was made at all when the accused was asked if she would take the polygraph examination." Based upon these findings by the military judge, as well as our examination of the record, we conclude that appellant's consent to take the polygraph examination was valid. *See* Statement of Consent to Polygraph Examination.

## II

We believe admissibility of appellant's April 24 statement to SA Gravlee and appellant's April 27 post-polygraph statement turns on the interplay between: (A) the Fifth Amendment right to counsel as de-

---

1. As to any entitlement to warnings under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), see our discussion under Part IIA, *infra.*

fined by *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, and *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); (B) the Sixth Amendment right to counsel under *McNeil v. Wisconsin, supra;* and (C) the notice requirement of Mil.R.Evid. 305(e).

## A

In *Edwards,* the Supreme Court reviewed the scope of the Fifth Amendment right to counsel and held

> that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484–85, 101 S.Ct. at 1884–85 (footnote omitted).

■ In *Arizona v. Roberson, supra,* the Supreme Court further held that *Edwards* was not offense specific, meaning that once an accused in custody indicates a desire to deal with police only through counsel, he or she cannot be interrogated by the authorities concerning any offense until counsel is made available. *See McNeil v. Wisconsin,* — U.S. at —, 111 S.Ct. at 2208.

The facts in this case are easily distinguished from those in *Edwards.* Here, appellant never indicated a desire to deal with the OSI only through counsel. Although appellant consulted with counsel concerning her Article 15 offenses, that election was not made in a custodial-interrogation setting. Further, "appellant was arguably not in custody at the time of [her] post-polygraph interview." *United States v. Sager,* 36 MJ at 145. We conclude, therefore, that appellant's statements were not taken in violation of the Fifth Amendment.

## B

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." While the Supreme Court in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), indicated the right to counsel arose only after indictment, the Court later expanded the right, in holding that the right to counsel attaches "after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).

We have previously held in *United States v. Mack,* 9 MJ 300, 315 (CMA 1980), that proceedings under Article 15 do not constitute "criminal prosecution" for Sixth Amendment purposes. This holding is based in part on *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), wherein the Supreme Court rejected the claim that an accused has a Sixth Amendment right to counsel at a summary court-martial because the purpose of a summary court-martial "is to exercise justice promptly for relatively minor offenses." *Id.* at 32, 96 S.Ct. at 1286, quoting para. 79a, Manual for Courts–Martial, United States, 1969 (Revised edition). Although a summary-court-martial is a proceeding that may result in loss of liberty, the Supreme Court did not find it to be a "criminal prosecution." 425 U.S. at 34, 96 S.Ct. 1287. The Supreme Court noted that "[m]uch of the conduct proscribed in the military is not 'criminal' conduct in the civilian sense of the word," *e.g.,* unauthorized absence (Art. 86, UCMJ, 10 USC § 886). 425 U.S. at 38, 96 S.Ct. at 1289. Based on *Middendorf,* we noted in *United States v. Mack,* 9 MJ at 312: "Since the greater includes the lesser, the same principle [no right to counsel] applies to Article 15 proceedings, regardless of whether con-

finement or correctional custody is part of the punishment imposable or imposed."

■ It therefore follows that service regulations like those of the Air Force[2] which provide servicemembers the option to consult with counsel before deciding whether to accept punishment under Article 15 do not create a Sixth Amendment right and do not constitute the "appointment" of counsel. While the Manual for Courts–Martial specifically provides a servicemember may, under some circumstances, have a spokesperson present at Article 15 proceedings, the servicemember is not entitled to consult counsel or to have counsel present. Para. 4c(1)(B), Part V, 1984 Manual, *supra.*

■ In this case, even if counsel had been retained or appointed for the Article 15 proceeding, appellant still would not have been entitled to have counsel notified of the intent to interview appellant. The Supreme Court in *McNeil v. Wisconsin,* — U.S. at —, 111 S.Ct. at 2207, 115 L.Ed.2d 158, held that invoking a Sixth Amendment right to counsel is "offense-specific," and police can initiate questioning on crimes other than the one charged without notifying counsel. In *McNeil,* the accused invoked his right to counsel at an arraignment proceeding and was later questioned concerning an offense separate and distinct from the one for which he was arraigned. Thus, the Supreme Court has drawn a distinction between invoking a Fifth and Sixth Amendment right to counsel. *Compare Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), *with McNeil v. Wisconsin, supra.*

Here, appellant's false official statements are separate and distinct from her Article 15 offenses. Therefore, there was no violation of her Sixth Amendment right to counsel; accordingly, no notice to counsel was required. *See United States v. Sager,* 36 MJ 137 (CMA 1992) (offenses in Manhattan, Kansas, were distinct from Fort Riley, Kansas, offenses).

2. *See* App. Ex. I, at ch 2.

## C

■ Notwithstanding our holdings concerning the Fifth and the Sixth Amendments, Mil.R.Evid. 305(e) has a notice requirement that overlaps *Edwards:*

When a person subject to the code who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been *appointed for or retained by the accused* or suspect with respect to *that offense,* the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed.

(Emphasis added.) If there is a violation of Mil.R.Evid. 305(e), then the evidence is inadmissible. Mil.R.Evid. 305(a) and 304(a).

Mil.R.Evid. 305(e) "is taken from *United States v. McOmber,* 1 MJ 380 (CMA 1976)." Drafters' Analysis, 1984 Manual, *supra* at A22–14.1 (Change 3). Since *McOmber,* this Court has addressed a variety of cases involving different factual nuances which reveal why Mil.R.Evid. 305(e) is inapplicable here.

We have already determined that appellant's Article 15 offenses were separate and distinct from her false official statements. The plain language of Mil.R.Evid. 305(e) specifically states that notification is mandatory only if someone is being questioned "with respect to that offense." This language has been interpreted by several cases. *See United States v. Sager, supra* (Government has no obligation to notify counsel in similar, yet different, civilian charge); *United States v. Spencer,* 19 MJ 184 (CMA 1985) (no notification of counsel in unrelated offenses); *United States v. Sutherland,* 16 MJ 338 (CMA 1983) (no notification of counsel necessary where counsel retained in unrelated charges).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and GIERKE concur.

SULLIVAN, Chief Judge (concurring in part):

As pointed out by the majority opinion, it is not necessary to decide whether invocation of a soldier's regulatory right to counsel at a proceeding under Article 15, Uniform Code of Military Justice, 10 USC § 815, constitutes attachment of his Sixth Amendment right to counsel concerning the offense addressed at that proceeding. *See generally United States v. Wattenbarger*, 21 MJ 41, 43–44 (CMA 1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986). I note that an Article 15 proceeding is not a bar to a later prosecution at courts-martial for the same offense (*United States v. Pierce*, 27 MJ 367 (CMA 1989)), and it might be conducted after charges have been preferred against an accused. I will not decide this difficult question today. *See United States v. Wattenbarger, supra* at 43 n. 1 and 44 n. 2.

WISS, Judge (concurring in the result):

## I

As to whether appellant's Fifth Amendment rights were violated by her April 24 and 28 dealings with agents of the Office of Special Investigations, my approach is somewhat different from the majority's.

Appellant indicated her desire for the assistance of counsel related to the drug offenses that were handled by nonjudicial punishment, *see* Art. 15, Uniform Code of Military Justice, 10 USC § 815. Even assuming *arguendo* that a proceeding under Article 15 constituted a "custodial interrogation" that triggered a Fifth Amendment right to counsel,[1] the mutual presence of two factors in this case leads me to conclude that the April 24 and 28 approaches to appellant would not contravene any such assumed Fifth Amendment right.

First, the charges for which appellant initially had requested legal advice had been disposed of on April 17.[2] Second, even in factual context, the *offenses* about which she was questioned on April 24 and 28 were entirely unrelated to the *offenses* that had prompted her assumed rights' invocation.[3] Even if an original invocation of an assumed Fifth Amendment right to counsel extends beyond the formal conclusion of proceedings arising out of that invocation,[4] it does not seem logical that, after that point, it encompasses totally unrelated offenses. It simply seems to me that, once charges that had caused invocation of the assumed Fifth Amendment right to counsel have been disposed of, the protective shield of *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), vaporizes, in the usual circumstance,[5] regarding

---

1. *See generally McNeil v. Wisconsin*, — U.S. —, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991) (rule of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*"). Presumably an argument of such a "custodial interrogation" would be premised on the fact that punishment under Article 15 for an offense does not necessarily bar a later court-martial for the same offense, *see United States v. Pierce*, 27 MJ 367 (CMA 1989), coupled with the practical realities of being summoned before one's commander for purposes of discipline for wrongdoing in a formal (albeit nonjudicial) setting.

2. Regarding this Article 15 proceeding, there is nothing in the record to imply any bad faith or gamesmanship intended to subvert any assumed Fifth Amendment right of appellant's.

3. There is nothing in this record that reflects any nexus between the two sets of offenses. The case might be different if, for example, appellant had alleged that agents had stolen some of her *drugs* during the search, as opposed to jewelry and CDs; or if she had complained that, *while planting the contraband* in her apartment, they had stolen her jewelry and CDs.

4. For example, as mentioned earlier in note 1 and as Chief Judge Sullivan points out, punishment under Article 15 does not necessarily preclude charges being sent to a court-martial for the same offenses. *See United States v. Pierce, supra.*

5. Where the record reflects an intention by the accused to appeal the Article 15 punishment or where the offenses were so serious that conclusion of the Article 15 proceeding obviously would not constitute disposition of the charges, the Fifth Amendment right that I have assumed *arguendo* in this appeal might not end with termination of the Article 15 proceeding.

offenses totally unrelated to the original ones. Thus, even assuming that the April 24 and 28 contacts were custodial, appellant's assumed Fifth Amendment rights would not have been violated in the absence of her invocation of those rights on either of those occasions.

## II

My agreement with the majority that the two sets of offenses were unrelated also resolves the Sixth Amendment question.[6] *See McNeil v. Wisconsin,* — U.S. —, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Additionally, for the same reason, appellant's complaint based on Mil.R.Evid. 305(e), Manual for Courts–Martial, United States, 1984, complaint is doomed. *See United States v. Sager,* 36 MJ 137, 147 (CMA 1992) (Wiss, J., concurring), and cases cited therein.

---

**6.** I do, though, reserve the same issue that Chief Judge Sullivan abstains from deciding in his separate opinion.