**UNITED STATES, Appellee,**

v.

**Sergeant James R. SAGER,
430–33–3567, United States
Army, Appellant.**

**ACMR 8801566.**

U.S. Army Court of Military Review.

30 March 1990.

For Appellant: Major Marion E. Winter, JAGC, Captain William J. Kilgallin, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kathryn F. Forrester, JAGC, Captain John J. Hogan, JAGC (on brief).

Before FOREMAN, SMITH and VARO, Appellate Military Judges.

## OPINION OF THE COURT

VARO, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial consisting of officers and enlisted members of rape and four specifications of indecent acts in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 934 (1982) [hereinafter UCMJ]. His approved sentence provides for a dishonorable discharge, confinement for twenty-five years, total forfeitures, and reduction to Private E1.

### Statement of Facts

On 1 August and 17 August 1987, the appellant was interviewed by the Riley County, Kansas, Police Department regarding allegations that on 1 August 1987 he had taken indecent liberties with neighborhood children, Theresa and Amber (both age six) in Manhattan, Kansas. These interviews occurred after the appellant had been advised of and waived his rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On 25 August 1987, again after receiving his *Miranda* rights, the appellant was given a polygraph examination by Riley County personnel regarding the 1 August allegations. The appellant continued to assert his innocence despite the polygraph examiner's indication to him that his answers appeared to be deceptive.

The next day, 26 August 1987, the appellant sought assistance from the Army Trial Defense Service (TDS) at Fort Riley, Kansas. Appellant was told that he could not have the assistance of a military attorney because the investigation in Riley County involved only potential civilian criminal charges.

On 4 September 1987, the appellant was again interviewed by the Riley County Police Department regarding the 1 August allegations as well as new allegations of sexual improprieties between the appellant and his own daughters (ages five and seven). The appellant agreed to this interview after being read his *Miranda* rights once again. The appellant denied all allegations and the interview terminated when he advised the interviewing detective that he had nothing further to say. The same day, the appellant's company commander directed him to move from his Government quarters to the barracks and ordered the appellant not to visit his wife or children without an escort in the rank of Sergeant First Class or higher. The company commander's actions resulted from a telephone call he received from the Riley County Police Department during which the commander was advised that civilian charges against the appellant could be expected on 7 September 1987.

On 8 September 1987, the appellant's mother retained Mr. David Rapp, a civilian attorney from Wichita, Kansas, to represent the appellant. Mr. Rapp contacted the Riley County Police and the Assistant County Attorney to determine the status of the case. Mr. Rapp met personally with the appellant in Wichita on 10 September 1987.

On 24 September, the company commander rescinded his order of 4 September, based on further information from Riley County authorities that the investigation was "not going anywhere." In an action unrelated to the investigation, the appellant was transferred to a different unit at Fort Riley on 19 October 1987. After his transfer, the appellant advised his new commander and first sergeant about the Riley County allegations and the fact that he was being represented by Mr. Rapp.

On 8 November 1987, military criminal investigators began investigating new allegations that the appellant had sexually assaulted two other children, Rebecca and Amanda (sisters, ages seven and five) while baby-sitting for them at his quarters on 7 November 1987. Following interviews with the children, their parents and an attending physician at Irwin Army Community Hospital, Special Agent (SA) Hayes, of the Criminal Investigation Command (CID) contacted the Fort Riley staff judge advocate's duty officer to determine whether there was sufficient probable cause to apprehend the appellant. When the duty officer advised SA Hayes that he could not give him authority to make the apprehension [1], SA Hayes called the appellant's acting company commander and received authority from him to apprehend the appellant at the appellant's government quarters located on Fort Riley.

Between 2300 and 2330 hours on the night of 8 November, SA Hayes was met at the appellant's quarters by two uniformed and armed military police who had been dispatched to provide "backup" for the apprehension. They approached the appellant's quarters and knocked. Mrs. Sager answered the door and told SA Hayes that her husband was in bed. She then called her husband to the door, and she invited SA Hayes and the military police into the house. The appellant appeared in his shorts and was asked by SA Hayes if he would come to Hayes' office immediately to discuss something. The appellant asked if the matter concerned the incident in Manhattan and was told it was a new subject that needed to be cleared up. The appellant agreed to go with SA Hayes. He went upstairs to dress and was followed by one of the military police "under Hayes' instructions, just to make sure that (he) probably didn't grab a weapon." The appellant was never advised that he was under apprehension because he told SA Hayes he would go with him. The appellant asked to drive his own car but was told to ride in the back of the military police vehicle.

On arrival at the CID office, SA Hayes first took general administrative data from the appellant. The appellant was not ad-

---

1. The record of trial is unclear regarding whether SA Hayes was advised there was insufficient probable cause, or whether the staff judge advocate duty officer merely did not have magisterial authority to authorize the apprehension.

vised of his rights under Article 31, UCMJ, 10 U.S.C. § 831 (1982), at the outset. During this preliminary screening, the appellant told SA Hayes that he had had some problems in Manhattan, Kansas, and that he had an attorney helping him on the case. SA Hayes told the appellant that the Manhattan incidents were out of his jurisdiction and that he was concerned solely with different allegations against the appellant. Just after midnight, at 0002, 9 November 1987, the appellant was advised of his rights by SA Hayes. Appellant completed a rights waiver form and provided SA Hayes with a statement that while baby-sitting for Rebecca and Amanda, he mistakenly had lain on top of Rebecca. Appellant stated that he did not remember doing anything improper. The appellant also noted that at times he had trouble remembering things. Appellant's statement of 8–9 November also provided some details about the allegations against him in Manhattan. At the conclusion of the interview, SA Hayes asked the appellant if he would be willing to undergo a polygraph examination on the matters discussed. The appellant said he would like to do so and SA Hayes told him he would contact him when he had the examination scheduled. The appellant's statement was completed at 0242, 9 November 1987. However, the appellant was not returned to his quarters. SA Hayes instructed the military police to transport the appellant to the military police station where the appellant was to be held until someone from his unit came to get him.

The appellant remained at the military police station until 0400 when his supervising noncommissioned officer arrived. Appellant was escorted back to his unit, not to his quarters, and was required to remain in the unit dayroom until 1600, 9 November 1987, when he was taken by his company commander to meet with his battalion commander. At that meeting, appellant's company commander ordered him to reside in the barracks, to avoid any contact with the children involved in the allegations or their parents, and to refrain from visiting his own quarters without an approved escort.

The next day, 10 November 1987, the appellant performed duties in his unit and also was sent to the hospital for a psychological examination. Upon his return, his commander directed him to go back to the CID office for the polygraph examination. He was escorted to the CID office and at 1830, 10 November 1987, he met with SA Hayes and SA Dutko, a CID polygraph examiner. At 1840 the appellant was again advised of his rights by SA Dutko and consented to undergo the polygraph examination. During the pretest interview, the appellant advised SA Dutko of the allegations against him in Manhattan and that he had taken two previous polygraph examinations regarding those allegations. Appellant also made it known to SA Dutko that the second of these two examinations had been taken at the direction of his civilian attorney after the first examination in Manhattan indicated the appellant was lying.

The examination was completed between 2000 and 2100, 10 November, and SA Dutko then began a post-examination interview with the appellant. During this interview, the appellant became nervous and began to pace around the room. At one point, appellant stood up and went toward the door as if to leave. SA Dutko told him if he left, he stood a good chance of going to jail. The appellant returned to his seat and gave a detailed statement that while he was baby-sitting for Rebecca and Amanda he somehow got into bed with Rebecca and she placed her hand on his penis. Following some talk with her, the appellant stated Rebecca removed her underwear and the appellant pushed his penis between her legs. According to the appellant, he was doing what Rebecca told him her father did to her. The appellant then went downstairs and placed his hand against Amanda's vagina outside her underwear, and asked her if her father did this to her. The appellant denied having sexual intercourse with either child. However, he also stated that he was not sure whether his penis entered Rebecca's vagina. Following these admissions, the appellant told SA Dutko that he did not want to talk to him any more and the interview was terminated at

approximately 2300, 10 November 1987. The appellant was then turned over to SA Hayes to document the oral admissions made to SA Dutko during the post-examination interview. The appellant agreed to provide a written statement to SA Hayes. SA Hayes asked the appellant if he still understood his rights and the appellant stated that he did. It is not clear, however, whether SA Hayes again fully advised the appellant of his rights at that time. At 0112, 11 November 1987, the appellant executed a three-page sworn statement regarding his admissions to SA Dutko.

On 12 November 1987, Mr. Rapp, the appellant's civilian defense counsel, informed SA Hayes that he was representing the appellant in both the Manhattan, Kansas, and Fort Riley matters.

On 16 November, SA Hayes contacted the Assistant Riley County Attorney to glean information about the county's investigation and possible charges from the allegations raised in August. The Assistant County Attorney provided the information and indicated that she had no objection to the military assuming jurisdiction over all of the allegations against the appellant. SA Hayes attempted to interview the appellant again on 20 November 1987 without contacting Mr. Rapp. The appellant made no admissions at this interview and the session terminated quickly when the appellant stated that he wished there was someone he could talk to closer than Wichita, Kansas, where Mr. Rapp was located. SA Hayes then made arrangements for the appellant to see counsel from the U.S. Army Trial Defense Service (TDS). TDS personnel advised SA Hayes that he should not contact the appellant again without going through them.

### Assignment of Error

The appellant asserts the following assignment of error:

THE MILITARY JUDGE ERRONEOUSLY DENIED APPELLANT'S MOTION TO SUPPRESS THE STATEMENTS OF 9, 10, AND 11 NOVEMBER 1987, TAKEN IN VIOLATION OF ARTICLE 31 AND THE CONSTITUTION.

The appellant asserts several bases for the assignment of error: apprehension without proper authority; denial of military trial defense counsel; use of information gained from unwarned or improperly warned statements taken by the Riley County police during interviews in August 1987; failure to properly advise the appellant of his rights under Article 31, UCMJ; and interviewing the appellant in the absence of counsel with knowledge that he was represented by counsel.

The scenario which eventually led to the appellant's conviction involves an intertwining of the appellant's rights under Article 31, UCMJ, and the fourth, fifth, and sixth amendments to the Constitution.

### I. *The Apprehension*

Whether the appellant had been lawfully apprehended at the time of his interviews with CID is determinative of whether his statements were taken in violation of his constitutional rights and, therefore, inadmissible. When SA Hayes first received complaints about the appellant, he had sufficient probable cause to apprehend the appellant. However, because the apprehension was to take place at the appellant's quarters, SA Hayes did not have inherent authority to make the apprehension. Rule for Courts–Martial 302(e)(2)(C)(i) requires that any apprehension of an occupant in a private dwelling (to include military controlled quarters) must be authorized by an official listed in Military Rule of Evidence 315(d) based upon a determination that probable cause exists. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 302(e)(2)(C)(i); Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 315(d). *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). With the information available, SA Hayes could have obtained such authority from a military magistrate, the installation commander, or any subordinate commander who had been delegated authority over the area in question. In the case at bar, SA Hayes contacted the appellant's acting company commander. His status as acting commander gave him the full authority to authorize searches and

seizures based on probable cause in areas under his control. However, the installation family quarters were not under his control and therefore, he could not authorize a search or seizure therein despite probable cause.

In its response to the assignment of error, the government concedes that SA Hayes did not have proper authority to apprehend the appellant. However, the government contends that the military judge made a complete and correct determination at trial that despite SA Hayes' intent to apprehend when he went to the appellant's quarters, no apprehension resulted. This determination was based on the conversation between the appellant and SA Hayes during which the appellant agreed to come to the CID office. The military judge went on to find that, even if an apprehension had occurred, it was done with the consent of the appellant and, therefore, met the requirements of Rule for Courts–Martial 302(e)(2)(A).

■ The mere fact that the appellant was never advised that he was under apprehension does not resolve the question of whether he was apprehended. Nor does the fact that the appellant agreed to go with SA Hayes resolve the issue of voluntariness. Rather, we must look to the overall situation at the time to determine whether, in the mind of the appellant, he was being apprehended and whether he really had any choice but to acquiesce. *United States v. Ward*, 12 M.J. 846 (A.C.M. R.), *petition denied*, 13 M.J. 227 (C.M.A. 1982). Based on the facts presented, we disagree with the military judge's determination and conclude that a reasonable person would have believed that he had no choice but to accompany SA Hayes and, therefore, an apprehension occurred.

■ We also disagree with the determination of the military judge that, even if an apprehension occurred, it was lawful because it was done with the consent of the appellant. The appellant's consent to be apprehended is not the controlling factor in determining the lawfulness of the apprehension in this case. Rather, based on our determination that SA Hayes had probable

cause to apprehend, the sole issue to be resolved is whether his presence in the appellant's quarters violated the appellant's fourth amendment rights so as to taint the apprehension and derivative statements. It is undisputed that the appellant's wife admitted SA Hayes and the military police into the quarters and that no ruse or trick was used by SA Hayes to gain entry. There is no question that Mrs. Sager had authority to allow SA Hayes into the quarters. Therefore, we find that the entry was with consent. *Ward* at 849. Once SA Hayes was properly inside the quarters, he needed no further consent from the appellant to either enter or apprehend. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). We find that the appellant was apprehended and hold that his apprehension was lawful.

## II. *Article 31, UCMJ, and Amendment V*

### A. Rights Warnings.

■ Our review of the record of trial leads us to conclude that the appellant was properly advised of his rights to remain silent and to have assistance of counsel on all occasions that he was questioned by Riley County authorities.

With regard to questioning by the CID, except for the final discussion with SA Hayes on 11 November following the post-examination interview, we have no doubt that the appellant was fully advised of his rights each time that he was questioned during the period 8–11 November 1987. We further find that even the 11 November discussion with SA Hayes was not unwarned. This discussion was a continuation of the prior warned interview with SA Dutko and the appellant stated he still understood his rights as read to him earlier in the evening.

### B. Right to Counsel.

The appellant now asserts that he did not truly understand his rights as read by SA Hayes and SA Dutko with regard to counsel. As noted above, the appellant's first visit to the TDS office in August 1987 resulted in his being advised that he was

not entitled to military defense counsel for the Manhattan, Kansas, charges which eventually were merged with the Fort Riley charges at trial. In light of *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), both the Army and Riley County had jurisdiction over the Manhattan, Kansas, charges when the appellant was first questioned by the Riley County Police Department in August. *United States v. Avila,* 27 M.J. 62 (C.M.A. 1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 562, 107 L.Ed.2d 557 (1989).

█ Because he was not provided military counsel at his August visit to the TDS office, the appellant asserts that he was denied effective pretrial assistance of counsel, citing *United States v. King,* 27 M.J. 664 (A.C.M.R.1988), *petition granted,* 28 M.J. 340 (C.M.A.1989). At the time of this visit, Riley County was the sole jurisdiction actively pursuing a criminal case against the appellant. No action had been taken to assert military jurisdiction over the Manhattan incidents at that time. In fact, such action did not occur until 16 November 1987, when SA Hayes and Riley County authorities agreed that the military should handle both the August and November allegations. Based on the fact that the appellant was facing no formal military charges in August, the Trial Defense Service at Fort Riley had no basis upon which to provide criminal defense services to the appellant for the offenses under investigation in Riley County. *United States v. Jordan,* 29 M.J. 177 (C.M.A.1989), *petition for certiorari filed* (Feb. 06, 1990) (No. 89–1261). Therefore, the assertion of denial of pretrial assistance of counsel is without merit.

█ Based on his original discussions with the TDS, the appellant also asserts that he did not understand that he could speak with a military attorney when he was questioned in November. This assertion is without merit. The appellant was advised of his rights using a standard Department of the Army Form 3881 (Rights Warning Procedure/Waiver Certificate) on 8–9 and 10–11 November. Each time he stated that he understood his rights and waived them. The form is quite specific in detailing the fact that an accused need not speak and may request the free assistance of military counsel. More importantly, when the appellant was first approached on 8 November 1987, he asked whether SA Hayes' visit concerned "the Manhattan incident." He was told it did not and that the Manhattan issues were being handled by civilian authorities and thus outside the scope of SA Hayes' authority. All the rights advisements were clear, and when the appellant asked to talk to someone locally on 20 November 1987, questioning was terminated and he was immediately referred to TDS.

Our review of the record of trial leads us to conclude that there were no violations of the appellant's right to remain silent or his right to counsel under Article 31, UCMJ, or the fifth amendment to the Constitution, nor of his right to pretrial assistance of counsel under the sixth amendment to the Constitution.

### III. *Questioning Without Counsel Present*

█ A second issue regarding whether the appellant's rights to counsel under the sixth amendment were violated centers on whether the appellant was improperly questioned after he had invoked his right to counsel.

The appellant contends that any questioning by military authorities was in violation of the Supreme Court's ruling in *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), which precludes subsequent interrogation of a suspect who invokes his rights to counsel, even when the subsequent interrogation involves an unrelated offense, and the suspect has been readvised of his rights and consents to the questioning. The appellant argues that Mr. Rapp's communications with the Riley County Police Department were tantamount to an invocation of the appellant's right to counsel thus precluding all subsequent police interrogations, military or civilian, without proper notice to counsel. Although this case began with two separate investigations by separate sovereigns, the merging of all offenses into

one court-martial requires us to determine whether both Riley County and military authorities at Fort Riley were on notice that the appellant was represented by counsel.

The record of trial reveals that the civilian defense counsel, Mr. Rapp, became involved in the case on 8 September 1987. On 8 and 11 September, Mr. Rapp made specific inquiries to the Riley County authorities to determine the status of the appellant's case.

At the time of the appellant's first interview with CID in November, there is no question that at least the appellant's commander was aware that the appellant had counsel for the case in Manhattan, Kansas. It is unclear exactly when CID personnel became aware of this fact, but it was definitely expressed by the appellant at his first interview with SA Hayes. In determining the applicability of *Arizona v. Roberson,* knowledge by anyone in the appellant's chain of command or by the CID, of an invocation of rights by the appellant, is sufficient. Based on the commander's earlier knowledge, we conclude that at the time the CID first received information about the Fort Riley allegations, the government already was on notice that the appellant had retained counsel for the Manhattan case. However, after reviewing the record of trial, and particularly the stipulations of expected testimony entered at a post-trial Article 39(a), UCMJ, session [2], we find that the appellant did not invoke his right to counsel during the Riley County interviews. Therefore, even applying *Roberson* very broadly and across lines of sovereignty, the absence of a specific invocation of rights leads us to conclude that the interrogations by the CID in November on unrelated charges did not violate the appellant's fifth or sixth amendment rights. *United States v. Jordan,* 29 M.J. 177, 188–189 (C.M.A.1989).

The factual scenario in this case is quite similar to *Jordan* wherein the Court of Military Appeals held that the mere detailing of military counsel to assist an accused was not tantamount to an invocation of right to counsel. In that case, the court was concerned with invocation of the right to counsel when the same offense was being investigated by both military and civilian authorities. In the case at bar, the final determination to assert military jurisdiction over all offenses in question draws the similarities even closer. We have addressed the counsel issue herein as a sixth amendment question to be resolved based on the presence or absence of a specific invocation of rights as set forth in Judge Cox's majority opinion in *Jordan.*

We recognize, however, that the subtle distinctions between this case and *Jordan* give great weight to Chief Judge Everett's dissenting opinion that once counsel is assigned to a case, an accused has invoked his fifth amendment right to counsel. This argument could be even more appropriate in this case than in *Jordan* because here the appellant already had retained counsel when he was questioned by CID. We are not dealing with a question of whether assignment of counsel pursuant to Rule for Courts–Martial 305(f) and the scope and responsibilities of such assignment make it tantamount to an invocation of rights to counsel. Unlike the scenario in *Jordan,* in the case at bar there is little doubt as to the nature of the conversations between the appellant and Mr. Rapp. As the appellant clearly retained counsel for the specific purpose of representing him in Manhattan, the issue to be resolved is whether such retention amounts to an invocation of rights where the appellant subsequently waives his rights and agrees to talk without counsel present. We hold, as did the majority opinion in *Jordan,* that absent a specific request to communicate with the police through counsel, the appellant's continued waivers were valid and his statements admissible.

■ Because the government was on notice of Mr. Rapp's representation of the

---

**2.** This post-trial session was held on 24 September 1988, for the purpose of gathering evidence to be used in the appellate review of this case in determining the applicability of *Arizona v. Ro-*

*berson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). *Roberson* was decided subsequent to the appellant's trial but prior to authentication of the record of trial.

appellant in Riley County, a further question arises whether Military Rule of Evidence 305(e) required the government to notify Mr. Rapp of the intended interrogations and provide him a reasonable time in which to attend prior to proceeding with the interviews on 8–9 and 10–11 November 1987.[3] While SA Hayes was aware of the Manhattan charges, he also was aware that they dealt with different victims, different times, and separate sovereigns. Further, aside from a general question regarding the nature of the Manhattan incident, SA Hayes limited his interviews to the Fort Riley charges. We conclude that despite the similar nature of the offenses, at the time of the interviews, the offenses were not related in any way so as to require notification of Mr. Rapp prior to the CID interviews. *Cf. United States v. Applewhite*, 23 M.J. 196, 199 (C.M.A.1987). The fact that the charges were merged at a later date does not change their separate status during the period 8–11 November 1987.

We have reviewed all other issues raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and through counsel, and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge FOREMAN and Judge SMITH concur.

---

3. Mil.R.Evid. 305(e) *Notice to Counsel.* When a person subject to the code who is required to give warnings under subdivision (c) [warnings to an accused in conjunction with Article 31, U.C.M.J.] intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect *with respect to that offense,* the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed (emphasis added).