UNITED STATES, Appellee,

v.

James R. SAGER, Sergeant
U.S. Army, Appellant.

No. 64,701
CM 8801566.

U.S. Court of Military Appeals.

Argued March 3, 1992.

Decided Sept. 30, 1992.

For Appellant: *Captain Teresa L. Norris* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Michael P. Moran, Captain James Kevin Lovejoy* (on briefs); *Major Michael J. Kelleher, Captain Alan M. Boyd, Captain Timothy P. Riley, Captain Cynthia J. Rapp.*

For Appellee: *Captain Samuel J. Smith, Jr.* (argued); *Colonel Dayton M. Cramer, Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Kenneth T. Grant, Captain Denise J. Arn, Captain Marcus A. Brinks* (on briefs); *Major Martin D. Carpenter.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

In May and July of 1988, appellant was tried by a general court-martial composed of officer and enlisted members at Fort Riley, Kansas. Contrary to his pleas, he was convicted of rape of a minor female, indecent exposure, and three specifications of committing indecent acts with several other young girls, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 25 years, total forfeitures, and reduction to Private E1.[1] The convening authority approved the findings

---

1. A post-trial session was held by the military judge on September 24, 1988. *See* Art. 39(a), Uniform Code of Military Justice, 10 USC § 839(a). He invited counsel for both sides to submit matters to him with respect to the decision of the Supreme Court in *Arizona v. Rober-* *son*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). After considering these submissions, he concluded that no invocation of appellant's rights to counsel or silence occurred in this case.

and sentence on November 30, 1988. On March 30, 1990, the Court of Military Review affirmed the findings and sentence. 30 MJ 777.

On December 26, 1990, this Court set aside the decision of the Court of Military Review and remanded this case for reconsideration in light of the decision of the Supreme Court in *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *United States v. Sager*, 32 MJ 244. On May 24, 1991, the Court of Military Review again affirmed the findings of guilty and the sentence. 32 MJ 968.

On October 2, 1991, this Court granted appellant's petition for further review. The issue before us now is as follows:

WHETHER THE MILITARY JUDGE ERRONEOUSLY DENIED APPELLANT'S MOTION TO SUPPRESS THE STATEMENTS OF 9, 10, AND 11 NOVEMBER 1987, TAKEN IN VIOLATION OF ARTICLE 31 AND THE CONSTITUTION.

We hold that the military judge did not err in denying appellant's motion to suppress these pretrial statements. *See generally McNeil v. Wisconsin*, — U.S. —, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *see United States v. Jones*, 26 MJ 353 (CMA 1988); *Delap v. Dugger*, 890 F.2d 285 (11th Cir.1989), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990).

The facts giving rise to the granted issue are fully developed in the decisions of the Court of Military Review and need not be recounted here. We note, however, that the challenged pretrial statements directly pertained only to two of appellant's alleged sexual offenses, *i.e.*, the ones which occurred at Fort Riley, Kansas. Accordingly, some additional discussion of appellant's offenses and the Government's proof thereof is appropriate.

Appellant was found guilty, contrary to his pleas, of the following offenses: (1) committing indecent acts with Teresa (age 6) between on or about May 28, 1987, and July 31, 1987, at Manhattan, Kansas; (2) committing indecent acts with Amber (age 6) on or about August 1, 1987, at Manhattan, Kansas; (3) indecent exposure in the presence of Teresa, Sandy (age 7), and Sheila (age 5) between on or about May 28, 1987, and July 31, 1987, at the same place; and finally, (4) rape of Rebecca (age 7); and (5) committing indecent acts with Amanda (age 5) on November 7, 1987, at Fort Riley, Kansas.

At trial, all of the children, except Amber, testified against appellant, and some medical evidence was offered supporting their testimony. Additional evidence of appellant's guilt of the Fort Riley offenses was introduced by the Government. First, there was evidence of appellant's typewritten and signed statement to Special Agent (SA) Hayes on November 9, 1987, in which appellant stated that he mistakenly laid upon Rebecca at Fort Riley, Kansas, on the evening of November 6, 1987. In that statement, he also admitted that he was earlier investigated for having sexual relations with some other children, including a girl named Teresa, in Manhattan, Kansas. Second, there was evidence of appellant's oral statement to another CID agent, SA Dutko, on November 10, 1987, in which appellant stated that he engaged in indecent sexual acts with Rebecca and Amanda on November 6 and 7, 1987, at Fort Riley in an attempt to discover what their father purportedly did to them. Finally, there was evidence of appellant's typewritten and signed statement to SA Hayes on November 11, 1987, recording the above-noted oral admissions.

In its remand decision, the Court of Military Review reiterated its purported[2] fac-

---

**2.** What a suspect was told by police and what he said and did in response thereto are questions of fact for the factfinder at trial and for the Court of Military Review with its unique factfinding power. Whether the police conduct or an accused's response met the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or constituted invocation of his right to counsel or silence are questions of law. *See McNeil v. Wisconsin*, — U.S. —, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991); *Connecticut v. Barrett*, 479 U.S. 523, 529–30, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987).

tual decisions which it believed determinative of the *Minnick* question we had presented. It said:

In our original opinion, we made the following findings of fact:

a. The appellant was properly advised of his rights to remain silent and to have assistance of counsel on all occasions that he was questioned by Riley County authorities. *Sager,* 30 MJ at 782.

b. The appellant did not invoke his right to counsel during any of the Riley County interviews. *Sager,* 30 MJ at 784.

c. The appellant's attorney-client relationship with Attorney Rapp began on 10 September 1987 after the appellant's mother retained Attorney Rapp to represent the appellant on the Manhattan incidents. The attorney-client relationship did not evolve from any invocation of rights by the appellant to civil or military authorities. *Sager,* 30 MJ at 779, 784.

d. The appellant was fully advised of and waived his rights each time that he was questioned by the Criminal Investigation Command (CID) during the period 8–11 November 1987. The post-polygraph examination interview on 11 November was not unwarned as it was a continuation of the prior warned interview that evening and the appellant was asked and stated that he still understood his rights as read to him earlier in the evening. *Sager,* 30 MJ at 782.

e. During the period 8–11 November 1987, the CID did not question the appellant on the Manhattan incidents. The appellant mentioned them and was told that they were matters under civilian jurisdiction. The questioning of the appellant during this period dealt solely with the 8 November 1987 allegations against the appellant regarding alleged sexual assaults committed by the appellant at Fort Riley, Kansas. These assaults were committed upon different children than those involved in the Manhattan incidents. *Sager,* 30 MJ at 783.

f. The appellant never invoked his right to remain silent or to seek the assistance of counsel at any time between his first meeting with Riley County officials on 1 August 1987 and his rendering of the last statement at issue on 11 November 1987. *Sager,* 30 MJ at 783–784.

g. The military did not assume active jurisdiction over the Manhattan incidents until 16 November 1987. *Sager,* 30 MJ at 783.

h. The appellant first requested assistance of counsel to CID on 20 November 1987 at which time the interview terminated and military counsel was provided.[2] *Sager,* 30 MJ at 781, 783.

Our further review of the record of trial confirms these findings of fact.

---

2. We note that at the time of the 20 November 1987 interview military authorities, and particularly CID personnel, were on notice that Attorney Rapp was representing the appellant on both the Manhattan incidents and the military charges. Therefore, the 20 November interview should never have been started without prior notice to Attorney Rapp pursuant to Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 305(e). We further note however that the 20 November 1987 interview was not at issue at trial nor is it at issue before this court. No information was gained from the interview as it was terminated immediately after it began. We find this error to have had no impact on the admissibility of the appellant's statements of 8–9 and 10–11 November and to have caused no prejudice to the appellant's case.

32 MJ at 970.

---

## INTRODUCTION

As a starting point, we note that the granted issue as framed does not fully reflect the complexity of appellant's suppression arguments on this appeal. In his final brief, he posits at least five separate grounds for asserting inadmissibility of one or all of his pretrial statements. The development and, indeed, the somewhat belated introduction of legally distinct arguments during his appeal subsumed the initial objections made by defense counsel at trial.

Trial defense counsel had contended that appellant's pretrial statements were inadmissible for three reasons. He asserted:

first, that the challenged statements were the product of an unlawful arrest; second, that they were coerced or unlawfully induced in violation of his Fifth Amendment privilege against self-incrimination; and third, that they were extracted in violation of his Sixth Amendment right to retained counsel. At that time he did not specifically contend that the statements were procured through impermissible custodial interrogation by military police in violation of the rules announced in *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966).[3]

On appeal before the Court of Military Review, appellate defense counsel expanded upon the above arguments. He asserted that the challenged statements were also coerced in violation of Article 31(d), UCMJ, 10 USC § 831(d). He also contended that they were extracted by police questioning prohibited by the Supreme Court decision in *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). In particular, the questions adducing his statements were asked after he invoked his right to counsel, without the presence of that counsel and without a proper waiver on his part. *See Miranda v. Arizona, supra.* He also contended that his statements were taken in violation of his right to effective pretrial assistance of counsel as delineated in the military case of *United States v. King*, 27 MJ 664 (ACMR 1988), *aff'd*, 30 MJ 59 (CMA 1990). Final Brief at 14.

After our Court remanded this case to the Court of Military Review for reconsideration in light of *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), appellate defense counsel enlarged on his effective-assistance-of-counsel argument. He asserted, in addition to all of the above arguments, that the accused's statements were adduced in violation of Mil. R.Evid. 305(e), Manual for Courts–Martial, United States, 1984. Before our Court again, he expanded upon his Fifth Amend-

ment argument to include contentions that his questioning on November 10 and 11 violated invocation of the right-to-silence rule provided in *Miranda v. Arizona, supra,* and *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).[4] He also suggested that the military police's disdain for his civilian defense counsel constituted egregious government conduct in violation of the Due Process Clause of the Fifth Amendment.

Arguably, all of the above arguments fit somewhere within defense counsel's initial objections at this court-martial. Moreover, the evidence of record is adequate to decide these questions, although neither the judge at trial nor the Court of Military Review can be faulted for failing to address specific objections not particularly raised before them. In any event, we will address appellant's arguments in the order presented in his final brief.

I

■ Appellant initially attacks admission of government evidence of his pretrial statements of November 1987 on the basis that he was denied his right to effective pretrial assistance of counsel. *See United States v. King*, 27 MJ at 667–68. He argues that his waivers of the right to counsel prior to the challenged statements were tainted by the Fort Riley Army Trial Defense Service's earlier refusal to provide him counsel. *See United States v. Tempia*, 16 USCMA 629, 37 CMR 249 (1967). In this regard, he particularly cites the denial of his August 26, 1987, request for representation by a military lawyer concerning the Manhattan charges. *See generally United States v. King*, 30 MJ at 66–68.

■ The premise of appellant's argument is that a servicemember is entitled to immediate representation by a military lawyer when he is under investigation by civil-

---

3. Trial defense counsel as part of his unlawful-coercion argument did assert that military police investigators ignored appellant's attempt to stop his interview on November 10, 1987.

4. *See* n.1, *supra.*

ian authorities for crimes over which the military has concurrent jurisdiction. He asserts that such a right can be drawn from the decision of the Supreme Court in *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), and its enlargement of court-martial jurisdiction over non-service related civilian offenses. He also bases it on a broad reading of service regulations and military case law. We disagree for several reasons.

■ We first note that appellant was being investigated by civilian police authorities on August 26, 1987, when he went to the Fort Riley Trial Defense Service. He was not then in custody, and he had not previously invoked his right to counsel when questioned by civilian police. Moreover, no formal charges had been lodged against him by civilian authorities. In these circumstances, appellant was not entitled to free legal representation under the

Fifth or Sixth Amendments. *See generally Moran v. Burbine*, 475 U.S. 412, 421, 428, 106 S.Ct. 1135, 1140, 1144, 89 L.Ed.2d 410 (1986); *Miranda v. Arizona, supra.*

We also note that appellant was not being investigated by military authorities on August 26, 1987, when he went to the Fort Riley Trial Defense Service. Moreover, he was not in military custody, and he did not even have occasion to invoke his right to counsel to military police. Finally, no formal charges had been lodged against him by military authorities at that time. In these circumstances, appellant was not entitled to free military legal representation under our decisions in *United States v. King*, 30 MJ 59 (CMA 1990), and *United States v. Tempia, supra.*

■ We further hold that the Uniform Code of Military Justice,[5] the Manual for Courts–Martial,[6] and Army Regulations[7]

---

5. Article 27, UCMJ, 10 USC § 827, states, *inter alia:*

   (a)(1) Trial counsel and *defense counsel shall be detailed for each general and special court-martial.* Assistant trial counsel and assistant and associate defense counsel may be detailed for each general and special court-martial. *The Secretary concerned shall prescribe regulations providing for the manner in which counsel are detailed for such courts-martial* and for the persons who are authorized to detail counsel for such courts-martial. (Emphasis added.)

6. RCM 502(d)(6), Manual for Courts–Martial, United States, 1984, similarily states:

   (6) *Duties of defense and associate or assistant defense counsel. Defense counsel shall represent the accused in matters under the code and these rules arising from the offenses of which the accused is then suspected or charged.* Under the supervision of the defense counsel an associate or assistant defense counsel may perform any act or duty which a defense counsel may perform under law, regulation, or custom of the service. (Emphasis added.)

7. Paragraph 6–3, AR 27–10 (22 Dec.1989)–Legal Services, *Military Justice* provides:

   h. *Trial defense counsel.* A trial defense counsel is a JA [judge advocate], certified under Article 27(b), UCMJ, *whose primary duties are to represent soldiers in courts-martial, administrative boards, and other proceedings and act as consulting counsel as required by*

*law or regulations.* Trial defense counsel perform other defense-related duties as prescribed by the Chief, USATDS. (Emphasis added.)

Paragraph 1–5(d), U.S. Army Trial Defense Service [USATDS]: Standard Operating Procedures, provides:

   d. *Limitations.*

          *       *       *

   (2) *USATDS counsel will provide representation or counseling only when authorized by Army Regulation or directed by the Chief, USATDS.* The following services will not be provided either by USATDS counsel, or their support personnel, except with the specific approval of the Chief, USATDS or, in Europe, at the SRDC:

   (a) Counseling with regard to summarized Article 15, UCMJ, proceedings;

   (b) Representation at formal Article 15, UCMJ, hearings; and,

   (c) Representation at summary courts-martial.

   (3) *Representation of clients before civilian courts or grand juries will not be undertaken by counsel assigned to USATDS. Military personnel who are charged or indicted by civilian authorities are not normally entitled to TDS representation.*

   (a) Advice to clients under investigation by the Department of Justice (DOJ) will not be undertaken by TDS counsel unless DOJ and DA have concurrent jurisdiction. If DA has no jurisdiction, no representation or advice is authorized. In cases of concurrent DOJ/DA jurisdiction, representation and ad-

do not require free military legal representation for a servicemember in these circumstances. Appellant's citation to paragraph 3b of U.S. Army Trial Defense Service Training Memorandum 91–8 (8 Oct.1991) does not change our view of this question. That Memorandum says that "TDS counsel should always provide basic suspect advice to all military personnel who are facing criminal charges whether the charges are in the civilian community or not." However, it was promulgated some 4 years after appellant went to the Fort Riley Trial Defense Service Office and in direct response to the appeal of this case.

We do not find appellant's argument based on *Solorio v. United States, supra,* to be persuasive in this context. That case does not concern itself with the attachment of the right to counsel; instead it deals with potential court-martial jurisdiction which still requires exercise by military authorities. Moreover, it surely did not intend to expand a servicemember's Fifth and Sixth Amendment right to counsel beyond that noted above.

Finally, we find that the challenged pretrial statements of November 1987 do not contain inculpatory admissions concerning the Manhattan offenses for which appellant sought legal assistance at the Trial Defense Service Office. Accordingly, any error in failing to provide legal assistance to appellant on that date had no impact on his conviction of those offenses. Moreover, we are simply not persuaded that a single instance of denial of assistance of military counsel for the Manhattan offenses impermissibly chilled appellant's decision to request military counsel 2 months later for the Fort Riley offenses. At that point he was expressly and repeatedly advised that military authorities were investigating the Fort Riley offenses and that he was entitled to counsel. Moreover, he had previously retained the services of a civil-

ian attorney on the Manhattan offenses whom he also could have consulted. This is not the frustrated-suspect situation referred to in *United States v. King* and *United States v. Tempia,* both *supra, see* 36 MJ at 141.

## II

■ Appellant next contends that his challenged pretrial statements were tainted by his illegal arrest on November 8, 1987, and that his subsequent incriminating statements should be suppressed. *See generally Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). His arrest was unlawful, he claims, because military police did not obtain the voluntary and informed consent of his wife to enter his home. *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). He suggests that the Court of Military Review was unreasonable in concluding to the contrary. We disagree.

Appellant concedes that the totality-of-the-circumstances test is the proper approach for determining the lawfulness of Mrs. Sager's consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *see Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Yet he argues that the court below ignored or failed to consider his wife's ignorance or lack of knowledge of her right to refuse entry to the arresting officers. *See New York v. Harris,* 495 U.S. 14, 17, 110 S.Ct. 1640, 1642, 109 L.Ed.2d 13 (1990); *United States v. Davis,* 30 MJ 718, 722 (AFCMR 1990).

We have found no *per se* rule invalidating consent on the above grounds. Moreover, we do not have any basis for concluding that the Court of Military Review ignored these circumstances in its analysis of this issue. *See generally United States v.*

---

vice will be limited to that required to protect the client from pending or potential judicial, nonjudicial or adverse administrative actions within DA. TDS counsel will not provide advice to clients concerning any concurrent civilian court or grand jury proceedings.

(b) Exceptions to this policy can only be granted by The Judge Advocate General. Requests for exception will be sent, in writing, through the Chief, TDS to The Judge Advocate General.

(Emphasis added.)

*Matlock,* 415 U.S. 164, 167 n.2, 94 S.Ct. 988, 991 n. 2, 39 L.Ed.2d 242 (1974). Accordingly, we find no legal error in the court's ruling on this question and join its conclusion that Mrs. Sager's consent was voluntary and her husband's arrest was lawful.

### III

■ Appellant's next argument supporting suppression is that the challenged statements were unlawfully taken from him after he invoked his right to counsel as guaranteed by the Fifth Amendment. *See Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). *See generally Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He asserts that he went to the Trial Defense Service on August 26, 1987, and requested military legal representation; he hired at his own expense civilian counsel on September 10, 1987; and he told Special Agent Hayes just before the November 9, 1987, interview that he was represented by civilian counsel on other charges. He contends that these acts "expressed his desire to deal with the police only through counsel" and, therefore, further interrogation without legal counsel was prohibited. *See Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981).

A similar argument was entertained and rejected by the Supreme Court in *McNeil v. Wisconsin,* —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). There, an accused was charged with armed robbery in West Allis, Wisconsin, and was represented by a public defender at a bail hearing for this offense. Later, while in jail on that charge and after being advised of his *Miranda* rights and waiving them, he was then questioned by police about a murder and other crimes in Caledonia, Wisconsin, and provided incriminating statements. The Supreme Court held that questioning by the police on the Caledonia offenses did not violate the accused's previously attached and invoked Sixth Amendment right to counsel

on the West Allis offense. —— U.S. at ——, 111 S.Ct. at 2207–08. More importantly, it held that his conduct in expressing his desire for counsel concerning the West Allis offense did not constitute an expression of his desire for counsel at a later time for other offenses. Accordingly, appellant's request for counsel in August 1987 for the Manhattan offenses and his retention of counsel in September 1987 for the Manhattan offenses did not constitute "invocation" of his right to counsel with respect to his later police questioning about the Fort Riley offenses.

■ A question remains whether appellant's November 8 notice to SA Hayes of his representation by civilian counsel concerning the Manhattan offenses constituted invocation of his Fifth Amendment right to counsel during his questioning on the Fort Riley offenses. *See McNeil v. Wisconsin, supra.* We think not. This statement was not proffered by appellant in response to his advisement of his right to consult counsel. Instead, it was a spontaneous and unsolicited disclosure by appellant during a background inquiry by SA Hayes. Accordingly, we conclude along with the Eleventh Circuit that reference to representation in another matter did not even equivocally invoke a suspect's right to counsel under *Miranda. Delap v. Dugger,* 890 F.2d at 295.

### IV

■ The next issue in this case particularly concerns appellant's post-polygraph oral statement to SA Dutko on November 10, 1987. Appellant asserts that he unequivocally invoked his right to remain silent prior to these admissions and that therefore they were inadmissible under the decision of the Supreme Court in *Miranda v. Arizona,* 384 U.S. at 473–74, 86 S.Ct. at 1627. In the alternative, he asserts that, even if he only equivocally asserted his right to silence, SA Dutko improperly employed coercion to continue his offense-related questioning and thus failed to "scrupulously honor" his decision to remain silent as required by *Michigan v. Mosley,*

423 U.S. 96, 104–06, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313 (1975). *See also* Art. 31(d). Accordingly, he contends that evidence of his oral admissions to SA Dutko was barred by the above decisions.

The Supreme Court in *Miranda v. Arizona, supra,* made clear the procedure to be followed by law enforcement officers when a suspect in custody exercises his right to remain silent. Chief Justice Warren wrote:

> Once warnings have been given, the subsequent procedure is clear. *If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege;* any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

384 U.S. at 473–74, 86 S.Ct. at 1627–28 (emphasis added; footnote omitted). While no particular words or actions are required to exercise one's Fifth Amendment right to silence, we have generally held that its invocation must be unequivocal before all questioning must stop. *See United States v. Schake,* 30 MJ 314, 319 (CMA 1990); *see also Campaneria v. Reid,* 891 F.2d 1014, 1021 (2d Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991).

Turning to appellant's claim, we conclude that it fails for several reasons. First, appellant was arguably not in custody at the time of his post-polygraph interview, and thus the *Miranda* invocation-of-silence rule did not even apply to him. *See Jacobs v. Singletary,* 952 F.2d 1282, 1291 (11th Cir.1992). Here, the record shows that SA Dutko, prior to securing any admissions from appellant, advised him that he was "free to leave" any time. (R. 193). *See*

*Leviston v. Black,* 843 F.2d 302, 304 (8th Cir.), *cert. denied,* 488 U.S. 865, 109 S.Ct. 168, 102 L.Ed.2d 138 (1988). *See also United States v. Levy,* 955 F.2d 1098, 1104 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 102, 121 L.Ed.2d 62 (1992); *United States v. Cota,* 953 F.2d 753, 759 (2d Cir. 1992); *United States v. Sutera,* 933 F.2d 641 (8th Cir.1991).

Second, assuming SA Dutko's conduct as a whole constituted custody within the meaning of *Miranda,* appellant did not unequivocally assert his right to silence. He did not say that he wished to remain silent, and in fact he initially declined to assert that right. Admittedly, in the midst of a heated argument with his questioner, he got up from the table, opened the door, and threatened to leave the room. However, such conduct can be rationally viewed as constituting no more than a mere ploy on appellant's part to convince the agent of his innocence or sincerity. *See United States v. Jones,* 26 MJ 353, 360 (CMA 1988); *cf. United States v. Montana,* 958 F.2d 516, 518 (2d Cir.1992).

Finally, assuming appellant's conduct at least equivocally invoked his right to silence, we conclude that SA Dutko's statement concerning the probability of future prosecution can be reasonably construed as an attempt to clarify appellant's intention concerning his rights. *See Delap v. Dugger,* 890 F.2d at 290; *Campaneria v. Reid, supra* at 1021.

**V**

██ The next question we will address is whether appellant's typewritten and signed statement to SA Hayes on November 11, 1987, should have been suppressed under *Miranda v. Arizona, supra.* Appellant notes that the Court of Military Review ignored the uncontroverted fact that appellant concluded his interview on November 10, 1989, with SA Dutko by invoking his right to silence. Accordingly, he asserts that SA Hayes' subsequent continuation of this interview including preparation of the typewritten statement on November 11, 1987, violated *Michigan v. Mos-*

*ley* and *Miranda v. Arizona,* both *supra, see* 36 MJ at 144.

Again, we note that appellant's claims based on *Miranda* and its progeny must be predicated on a finding of custody at the time of the suspect's unlawful questioning. However, SA Dutko's testimony established that, prior to the interview, he advised appellant that he was free to go at any time. Moreover, we are not convinced that the mere typing and securing of appellant's signature concerning his prior admissions can be likely perceived as interrogation for purposes of *Miranda. See generally Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990); *Arizona v. Mauro,* 481 U.S. 520, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987).

In any event, the typewritten statement of appellant's admissions dated November 11, 1987, was clearly cumulative of appellant's earlier oral admissions to Agent Dutko as witnessed by Agent Hayes. Accordingly, harmless error, if any error, occurred in admission of this evidence. *See Arizona v. Fulminante,* 499 U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

## VI

█ The final question we must address is whether admission of appellant's November 11 pretrial statement was barred by Mil.R.Evid. 305(e). Appellant asserts that both SA Dutko and SA Hayes knew that appellant was represented by a civilian counsel for the Manhattan offenses prior to the making of the November 11 statement. He also asserts that SA Dutko had earlier asked at least one question about the Manhattan offenses and probably more went unrecorded. Finally, he contends that SA Hayes' conduct on November 20, 1987, in attempting to question him without notifying his counsel demonstrated an overall intentional disregard for his civilian defense counsel.

█ *McNeil v. Wisconsin,* —— U.S. ——, ——, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991), clearly holds that an accused's Sixth Amendment right to counsel is "offense-specific." In other words, attachment and invocation of this constitutional right for one criminal offense does not attach and invoke it "for all future prosecutions." —— U.S. at —— – ——, 111 S.Ct. at 2207–08. Mil.R.Evid. 305(e) is likewise offense-specific. It states:

> (e) *Notice to counsel.* When a person subject to the code who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect *with respect to that offense,* the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed.

(Emphasis added.) Accordingly, military police investigators normally would not be required by the Constitution or the Manual to contact civilian counsel as a result of appellant's retention of a lawyer on other offenses. *See United States v. Spencer,* 19 MJ 184, 187 (CMA 1985).

█ The remainder of appellant's complaint is also without merit. We note that it is based in part on speculation that the military police investigators probably asked additional questions on the Manhattan offenses. We cannot entertain such an extra-record premise. *See generally* Art. 67, UCMJ, 10 USC § 867. Moreover, it also suggests that the agent's knowledge and appellant's comment on his previous investigation concerning the Manhattan offenses somehow merged or linked the two sets of crimes for purposes of Mil.R.Evid. 305(e). Such an argument is unsupported as a matter of law. Finally, he admits that his post-statement interview on November 20, 1987, was properly terminated in accord with his exercise of his right to counsel without any incriminating admissions. An egregious-government-misconduct claim cannot be sustained in this context. *See generally United States v. Luttrell,* 889 F.2d 806, 811–12 (9th Cir.1989), *cert. denied,* —— U.S.

——, 112 S.Ct. 1558, 118 L.Ed.2d 207 (1992).

In sum, appellant's statements were properly found to be voluntary and admissible by the military judge and the Court of Military Review.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and GIERKE concur.

Judge CRAWFORD concurs in the result and will file an opinion at a later date. *See* 36 MJ at 147.

WISS, Judge (concurring):

I write only to add a dimension to the discussion in Part VI of the majority opinion regarding appellant's claimed violation of Mil.R.Evid. 305(e), Manual for Courts–Martial, United States, 1984.

As that opinion points out, Mil.R.Evid. 305(e) is " 'offense specific' " in that its notice requirement kicks in only when the suspect has counsel "with respect to that offense...." 36 MJ at 146. Nonetheless, this Court has construed that rule to apply, as well, when the questioned interrogation involves an offense that is *related to* the offense for which a suspect has counsel. *See United States v. Spencer*, 19 MJ 184, 186–87 (CMA 1985). *See also United States v. Sutherland,* 16 MJ 338 (CMA 1983); *United States v. Lowry*, 2 MJ 55 (CMA 1976); *United States v. McOmber*, 1 MJ 380 (CMA 1976). Consequently, in order to resolve appellant's Mil.R.Evid. 305(e) complaint, we must inquire whether appellant's Manhattan offenses were related to his Fort Riley offenses.

Granted there is some similarity in the nature of the two groups of offenses, since both involve child sexual abuse. I do note, though, that one of the Fort Riley offenses was *rape*, a sex crime markedly more serious than committing indecent acts or indecent exposure, which were the subjects of all Manhattan charges, as well as the other Fort Riley charge. More significantly, the two sets of crimes involved different vic-

tims, different places (the Manhattan civilian community and the Fort Riley military community), and different time frames (the Manhattan offenses being grouped between May 28 and July 31, as well as August 1, 1987, while the Fort Riley offenses both occurred several months later on November 7, 1987).

Under these circumstances, I am satisfied that the Manhattan offenses were not related to the Fort Riley offenses for purposes of Mil.R.Evid. 305(e), so I concur in the majority opinion.

CRAWFORD, Judge (concurring in the result): [1]

I agree with the result reached in the majority opinion but write separately to clarify several matters concerning the *Miranda* doctrine; Art. 31(b), Uniform Code of Military Justice, 10 USC § 831(b); and the Sixth Amendment right to counsel. Although those clarifications do not change the result in this case, they could have a significant impact on the application of corresponding law and ensuing requirements to the facts of future cases. Thus I shall discuss the *Miranda* doctrine, Art. 31(b), and the Sixth Amendment right to counsel in turn.

In *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), Chief Justice Warren declared that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant, unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.... Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.... If, however, he [the defendant] indicates in any manner

---

1. This opinion was filed after release of the majority opinion in order to permit further consideration of the issues that was not possible

during the closing days of the term of Court. It was circulated to the other judges on October 6, 1992.

and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates *in any manner* that he does not wish to be interrogated, the police may not question him.

(Emphasis added.)

Contrary to the implication by the majority, 36 MJ at 143, *Miranda* and the Military Rules of Evidence do not draw a distinction between exculpatory and inculpatory statements.

Concerning invoking the right to silence, *Miranda* overlaps with Article 31(b). Article 31(b) provides:

No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

The right-to-silence component of Article 31(b) is different from the right-to-silence element of *Miranda* because *Miranda* is only triggered when there is a custodial interrogation. The right to silence under Article 31(b), however, is triggered when the individual is a suspect. Thus, it is incomplete to discuss the right to silence in the military only in terms of custodial interrogations.

When a suspect unequivocally invokes "in any manner" his or her right to silence or his or her right to counsel, all questioning must cease. *Miranda v. Arizona*, 384 U.S. at 444–45, 86 S.Ct. at 1612. The converse of this rule set forth by the majority

is not true, however. The majority states that "we have generally held that its [the right to remain silent] invocation must be unequivocal before all questioning must stop." 36 MJ at 145. Also, the majority indicates that, "assuming SA Dutko's conduct as a whole constituted custody within the meaning of *Miranda*, appellant did not unequivocally assert his right to silence." *Id.* at 145.

When the assertion of a right is equivocal, the agent must either cease the interrogation or clarify the assertion. *See, e.g., United States v. DeChamplain*, 22 USCMA 150, 46 CMR 150 (1973) (ambiguous assertion of right to silence); *United States v. Attebury*, 18 USCMA 531, 40 CMR 243 (1969); *Towne v. Dugger*, 899 F.2d 1104 (11th Cir.), *cert. denied*, 498 U.S. 991, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990); *United States v. Gotay*, 844 F.2d 971 (2d Cir.1988).

Lastly, the majority appears to confuse the Fifth Amendment right to counsel as set forth in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and its progeny, and the Sixth Amendment right to counsel as set forth in *McNeil, infra.* As some commentators have indicated:

The Court distinguished *Roberson* in *McNeil v. Wisconsin*, [—— U.S. ——] 111 S. Ct. 2204 [115 L.Ed.2d 158] (1991) when it held that an invocation of Sixth Amendment rights was "offense-specific" and that the police could therefore initiate questioning on crimes other than the crime with which the defendant was charged.

S. Saltzburg & D. Capra, *American Criminal Procedure, Cases and Commentary* 548 (4th ed. 1992).[2]

**2.** As Professors LaFave and Israel state:

And in any event, because the Sixth Amendment right is "offense-specific" and "cannot be invoked once for all future prosecutions," it follows that "its *Michigan v. Jackson* [475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)] effect of invalidating subsequent waivers in police-initiated interviews is offense-specific." This means, for example, that if a defendant

exercises his Sixth Amendment right when brought into court on an armed robbery charge, that is no bar to subsequent police-initiated questioning about an unrelated murder.

\* \* \*

[T]he Court later [so] held in *McNeil v. Wisconsin*, reasoning that invocation of the Sixth Amendment interest does not also constitute

Different results may be obtained depending on whether *Edwards* or *McNeil* controls.

invocation of *Miranda* as to other, uncharged offenses, for a defendant "might be quite willing to speak to the police without counsel present concerning many matters, but not the matter under prosecution."

W. LaFave & J. Israel, *Criminal Procedure* 310 (footnotes omitted), 342 (footnote omitted) (2d ed. 1992).